United States District Court
Southern District of Texas
**ENTERED**
March 15, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JEWELL THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 2:23-CV-00190 |
| | § | |
| WARDEN ELBERT HOLMES, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Jewell Thomas, appearing *pro se*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. He has paid the $402.00 filing fee. Plaintiff claims that the defendants in this case violated his Eighth Amendment rights, his rights under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12189, and the Rehabilitation Act (RA), 29 U.S.C. §§ 701-797. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A.

For the reasons discussed below, the undersigned recommends that certain of Plaintiff's claims be retained. The Court will direct the Clerk's office in a separate order to issue summonses to Plaintiff for each of the defendants retained so that Plaintiff can effectuate service. As Plaintiff has paid the filing fee in this case, he is responsible for service of process on the retained defendants. *See* Fed. R. Civ. P. 4(c)(3). The undersigned further recommends that the majority of Plaintiff's other claims be dismissed with prejudice as frivolous or for failure to state a claim upon which relief may be granted. Lastly, the undersigned recommends that Plaintiff's claims of supervisory liability against several McConnell Unit wardens based on their alleged

failure to train or supervise staff be dismissed without prejudice for failure to state a claim upon which relief can be granted.

### A. *Jurisdiction.*

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

### B. *Background.*

Plaintiff is a prisoner in the Texas Department of Criminal Justice – Correctional Institutions Division (TDCJ-CID) and is housed at the McConnell Unit in Beeville, Texas. Plaintiff's allegations in this case arise in connection with his current housing assignment. Plaintiff filed this suit on July 21, 2023, broadly alleging that the defendants violated his civil rights by subjecting him to excessively hot living conditions at the McConnell Unit and denying him appropriate medical care in connection with the excessive heat conditions.

In his amended complaint, Plaintiff named 14 defendants:

- Elbert Holmes, a former McConnell Unit warden ("Warden Holmes");

- Jerry Sanchez, another former McConnell Unit warden ("Warden Sanchez");

- Placido Samaniego, an assistant warden at the McConnell Unit ("Warden Samaniego");

- James Tanner, unit major at the McConnell Unit ("Major Tanner");

- Adan Cavazos, unit lieutenant at the McConnell Unit ("Lieutenant Cavazos");

- Alexis Jimenez, unit sergeant at the McConnell Unit ("Sergeant Jimenez");

- Adriana Gonzalez-Diaz, unit sergeant at the McConnell Unit ("Sergeant Gonzalez-Diaz");

- Jessy Perez, unit sergeant at the McConnell Unit ("Sergeant Perez");

- Dr. Isaac Kwarteng, medical director at the McConnell Unit ("Dr. Kwarteng");

- Bobby Lumpkin, TDCJ-CID Director ("Director Lumpkin");

- Bryan Collier, TDCJ Executive Director ("Executive Director Collier");

- the State of Texas;

- John Doe, the current McConnell Unit ("Warden John Doe"); and

- Candice Flannin, a deputy warden at the McConnell Unit ("Warden Flannin").

(Doc. No. 6, pp. 6-7.)  Plaintiff asserts claims against Defendants under the Eighth Amendment, the ADA, and RA.  *Id.*

Following the filing of his amended complaint, the Court issued an order directing Plaintiff to respond to a questionnaire containing 22 questions.  (Doc. No. 9.)  Plaintiff filed a More Definite Statement containing his responses to the questions posed by the Court.  (Doc. No. 10.)  In a separate order, the Court granted Plaintiff's motion to amend his responses to Questions 13 and 14.  (Doc. No. 11.)  The Court further granted Plaintiff's motion to amend his amended complaint by: (1) dismissing Major Tanner from this case; (2) adding Dr. Gary Morton, a physician employed at the McConnell Unit ("Dr. Morton") as a party defendant; (3) substituting Warden Adrian Amonett ("Warden Amonett") in place of the "Warden John Doe" defendant; and (4) changing Warden Flannin's last name to "Flannel" (hereinafter "Warden Flannel").  With these changes, Plaintiff now sues the following 14 defendants in this lawsuit: Warden Holmes; Warden Sanchez; Warden Samaniego; Lieutenant Cavazos; Sergeant Jimenez; Sergeant Gonzalez-Diaz; Sergeant Perez; Dr. Kwarteng; Dr. Morton; Director Lumpkin; Executive Director Collier; the State of Texas; Warden Amonett; and Warden Flannel.

### C. *Plaintiff's factual allegations.*

Plaintiff's lawsuit centers on the McConnell Unit living conditions, which he claims were excessively hot during the summers of 2022 and 2023.  Liberally construed and broadly stated, Plaintiff claims that he was subjected to hot conditions in violation of his constitutional rights, that prison officials exhibited deliberate indifference to his serious medical needs caused by the excessive heat conditions, and that he was denied reasonable accommodations for his various disabilities and limitations which made him susceptible to excessive heat conditions.  Unless otherwise noted, the facts set forth here are drawn from Plaintiff's amended complaint (Doc. No. 6), and his responses to the Court's Questionnaire as amended (Doc. Nos. 10 and 11).

#### 1. *Plaintiff's custody status.*

On March 7, 2022, Plaintiff's custody status was downgraded to "G5," where it remains currently.  (Doc. No. 10, p. 1.)  According to Plaintiff, G5 custody status means that he is confined to closed custody status 24 hours per day and that he is required to have an escort and hand restraints when moving about the unit.  *Id.*

#### 2. *Plaintiff's alleged medical conditions, disabilities, and limitations.*

Plaintiff claims that he suffers from the following physical and mental health conditions: hyperlipidemia; Type II diabetes; hypertension; seizures; Major Depression Disorder with psychotic features; Post-Traumatic Stress Disorder ("PTSD"); and schizophrenia.  (Doc. No. 10, p. 2.)  Plaintiff state that he takes the following medications: (1) Verapamil, for hypertension; (2) Atorvastatin, for hyperlipidemia; (3) Metformin, Glipizide, and Novolin, for type II diabetes; and (4) Haloperidol (or Haldol), for schizophrenia.  *Id.*  Plaintiff has the following restrictions in place for excessive heat conditions: (1) no work in direct sunlight; (2) no temperature extremes;

and (3) no humidity extremes.  *Id.*  Plaintiff did not expressly indicate whether the heat restrictions applied to work assignments as opposed to unit or housing restrictions.

Plaintiff states that in 2010 the Social Security Administration determined him to be disabled "due to a vehicle v. pedestrian automobile accident."  (Doc. No. 10, p. 3.)  As a result from the accident, Plaintiff suffers from what he calls a lateral pelvic tilt, or short-leg syndrome, which he claims causes him to walk with an awkward gait.  *Id.*  Plaintiff states that he further suffers from chronic pain syndrome with pain reaching his feet, ankles, left leg, left knee, hip, entire back, and lower neck.  *Id.*  According to Plaintiff, his pain levels are exacerbated "while performing activities of daily living."  *Id.*  Plaintiff's alleged physical limitations include the inability to stand, lift, bend, stoop, squat, sit, and walk.  *Id.*  His alleged mental limitations include the inability to sleep, think, concentrate, read, and breathe when he has panic attacks.  *Id.* Plaintiff states that his accident led to him having PTSD, schizophrenia, and Major Depressive Disorder with psychotic features.  *Id.*  Plaintiff further states that, [w]ith respect to excessive heat, [his] respiratory, circulatory, digestive, and endocrine major bodily functions are impaired." *Id.*

### 3.  *Plaintiff's requests for specific accommodations for his alleged disabilities.*

Plaintiff has requested specific accommodations for his disabilities through Step 1 and Step 2 grievances, in which he requested to be placed in an air-conditioned environment without being placed inside a small cage.  (Doc. No. 10, p. 4.)  In a Step 1grievance dated June 10, 2022 (Grievance No. 2022109768), Plaintiff complained about the excessive heat conditions and sought either to be placed in an air-conditioned cell or to be transferred to another unit that could meet his heat restriction needs.  (Doc. No. 6, p. 27.)

Plaintiff states that he made a further accommodation request for an air-conditioned environment on April 17, 2023 through an email to which a Step 1 grievance was attached. (Doc. No. 10, p. 4.)  In a Step 1 grievance dated April 17, 2023 (Grievance No. 2023093591), Plaintiff again sought either to be placed in an air-conditioned cell or to be transferred to a unit that could meet his heat restrictions needs.  (Doc. No. 6, p. 23.)  Plaintiff allegedly sent the email to Warden Holmes, Warden Samaniego, and Warden Flannel.  (Doc. No. 10, p. 4.)  Plaintiff made similar accommodation requests at the Step 2 grievance level.  *Id.*  In response to his Step 2 grievance dated June 13, 2023, Plaintiff was informed that his Heat Sensitivity Score was P00, and that Plaintiff therefore did not meet the criteria for air-conditioned housing.  (Doc. No. 6, p. 25.)

Plaintiff indicates that he made multiple requests for the specific accommodation of an air-conditioned environment with Sergeant Jimenez, Sergeant Gonzalez-Diaz, and Sergeant Perez.  (Doc. No. 10, p. 4.)  During "so called wellness checks" conducted on August 1, 2023, August 7, 2023, and August 8, 2023, Plaintiff's request for a similar accommodation was made to Lieutenant Cavazos.  *Id.*  Plaintiff nevertheless acknowledges he was not treated differently from other inmates who are not disabled.  *Id.* at 5.

### 4. Plaintiff's allegations regarding TDCJ's excessive heat policy.

Plaintiff states that Administrative Directive 10.64 ("AD-10.64") is designed to protect inmates from suffering heat cramps, heat exhaustion, and heat stroke.  (Doc. No. 10, p. 6.)  According to Plaintiff, AD-10.64 requires the accommodation of inmates with medical conditions that are aggravated by excessive heat and the accommodation of medical conditions that require certain medications that are adversely affected by excessive heat.  *Id.*  These accommodations allegedly consist of implementing safety measures to keep inmates hydrated

and their bodies as cool as possible, such as through cold showers.  *Id.*  Plaintiff states that the "full respite program consist[s] of unlimited iced water, unlimited cold showers throughout the day per AD-10.64[,] and unlimited access to air-conditioned environments upon request(s)."  *Id.* at 5.

According to Plaintiff, his injuries caused by the failure of prison officials to fully implement AD-10.64 included heat cramps, palpitations, shortness of breath, dizziness, trouble concentrating, lightheadedness, inability to stand walk, or lift without chest pains, fatigue, insomnia, impairment of the thermoregulatory regulatory system, and impaired respiratory, circulatory, endocrine, cardiovascular and digestive systems.  (Doc. No. 10, p. 10.)

### 5.  *Plaintiff's allegations regarding the denial or delay of respite requests.*

Plaintiff alleges that, from April 2022 through August 2022, when Warden Sanchez was the McConnell Unit's warden, each of his 30 to 50 requests for respite in an air-conditioned environment was denied.  (Doc. No. 6, p. 12.)  In response to the Court's inquiry about incidents where he was denied respite from April 2022 through August 2022, Plaintiff states there was a policy presumably put in place by Warden Sanchez contrary to AD-10.64, where all of the 300 inmates with a G5 custody status like Plaintiff were automatically denied respite.  (Doc. No. 10, p. 16.)  Plaintiff believes that this policy was in place because there was not enough staff and other resources to handcuff all 300 G5 inmates and escort them to and from an air-conditioned environment.  *Id.*

Without providing any details of any particular incident where he was denied respite between April 2022 and August 2022, Plaintiff states that he suffered the following medical and mental conditions in connection with the denial of respite during these months: heat cramps; chest pains; palpitations; inability to stand, walk or lift without feeling chest pains; fatigue;

impairment of the thermoregulatory system; and impaired circulatory, endocrine, cardiovascular and digestive systems.  (Doc. No. 10, p. 17.)  Plaintiff acknowledges that although he had no access to air-conditioned environments during these months, he was provided access to showers one to three times per week and was getting cold water.  *Id.*  Plaintiff denies that he was ever given access to "full respite" during these months.  *Id.*

Plaintiff generally alleges that his requests for respite at all times were denied by Sergeant Jimenez, Sergeant Gonzalez-Diaz, and Sergeant Perez due to the lack of availability of staff and staff shortages to escort him to the air-conditioned areas.  (Doc. No. 10, p. 5.)  Plaintiff lists the following incidents in the summer of 2023 where he sought to be taken to respite:

- June 29, 2023 (11:40 p.m.) – Sergeant Gage Rivas denied Plaintiff's request for respite due to understaffing.  (Doc. No. 10-1, p. 2.)

- June 30, 2023 (10:00 a.m. and 4:40 p.m.) – Officer Erritt denied Plaintiff's requests for respite because no space was available.  After checking for availability, Officer Erritt escorted Plaintiff to respite at 6:20 p.m. on June 30.  *Id.*

- July 1, 2023 (10:15 a.m.) – Officer Nathaniel Smith denied Plaintiff's requests for respite due to staff shortages, meaning that no escort was available.  *Id.*

- July 2, 2023 (9:30 a.m.) – Plaintiff asked an officer to speak with Sergeant Gonzalez-Diaz about his request to receive an escort to respite.  Plaintiff, however, did not receive respite due to understaffing.  *Id.*

- July 3, 2023 (10:00 a.m.) – Plaintiff requested respite from an officer during a "special count."  Plaintiff was not escorted to respite until 3:41 p.m. where he stayed until 5:47 p.m.  *Id.*

- July 4, 2023 (9:45 a.m.) – Plaintiff requested respite from an unknown officer during a "special count."  Due to staff shortages, Plaintiff was not taken to respite until later in the afternoon.  An unknown officer brought Plaintiff to respite in Building 12 at 4:09 p.m.  *Id.* at 3.

- July 5, 2023 (9:09 a.m.) – Plaintiff requested respite from an unknown officer. Plaintiff asked the officer to speak to Sergeant Jimenez who was the supervisor on duty.  Plaintiff was not offered respite until 4:50 p.m. when two officers approached to take him to the diabetic clinic for his daily insulin.  Around 5:00 p.m., Plaintiff spoke to Warden Samaniego and Sergeant Jimenez, who indicated that the delay in accessing respite was due to understaffing.  *Id.*

- July 9, 2023 – Plaintiff requested respite at an unknown time from Officer Torres, who relayed Plaintiff's request to Sergeant Gonzalez-Diaz.  At 5:50 p.m., Officer Torres escorted Plaintiff to his insulin treatment and then to respite at the 12 Building at 6:06 p.m.  Plaintiff left the respite area in Building 12 at 9:15 p.m.  *Id.*

- July 10, 2023 (10:18 a.m.) – Plaintiff requested respite from Officer Torres, who then checked to see whether space was available in the 12 Building.  Officer Torres received no response.  At 11:25 a.m., Plaintiff requested respite from Sergeant Garcia.  Plaintiff, however, was not offered respite until 6:30 p.m. when he was escorted for his daily insulin injection.  Plaintiff declined respite because the sun was going down.  *Id.* at 4.

- July 11, 2023 – Plaintiff requested respite during the morning count. Plaintiff, however, arrived at the respite location in Building 12 at 6:06 p.m., where he stayed for three hours.  *Id.*

- July 12, 2023 (10:18 a.m.) – Plaintiff requested respite during the morning count. He arrived at the respite location at 9:15 a.m. and stayed until 1:30 p.m. *Id.*

- July 13, 2023 – Plaintiff requested respite during the morning count. At 3:00 p.m., Sergeant Jimenez approached Plaintiff's cell and told Plaintiff he would escort Plaintiff to respite "when he is done with some move." *Id.* at 5.

- July 14, 15, and 16, 2023 (Friday through Sunday) – Sergeant Perez confirmed to Plaintiff that no escorts were available to take him to respite each of these three days due to understaffing. *Id.*

- July 17, 2023 (10:00 a.m.) – Plaintiff requested respite from Officer Nathaniel Smith. However, Plaintiff received no respite that day. *Id.*

- July 18, 2023 (10:18 a.m.) – Plaintiff requested respite from an unknown officer and also instructed the officer to inform the sergeant on duty of his request. Plaintiff did not receive respite until 5:55 p.m., after his insulin injection. Plaintiff received respite inside a medical cell for 90 minutes. *Id.*

- July 19, 2023 – Plaintiff was taken to a multi-purpose room in connection with a shakedown. Later that day, no escort was available for his insulin injection, and Plaintiff was not taken to respite. *Id.*

- July 20, 2023 – Plaintiff requested respite at an unknown time from "Sgt. Hernandez/Fernandez from D.card." [sic] Plaintiff, however, was not offered respite until 6:00 p.m. when he went for his daily insulin injection. Plaintiff declined respite because it was late in the day. *Id.*

- July 21, 2023 – Plaintiff requested respite at 11:15. At 11:57 a.m., he was escorted to respite at the 12 Building where he stayed until 3:45 p.m. *Id.* at 6

- July 22, 2023 – Plaintiff's request for respite was denied due to no availability of escorts.  *Id.*

- July 23, 2023 – Plaintiff requested respite at noon.  He arrived at the respite location at 1:15 p.m. where he stayed until 4:30 p.m.  *Id.*

- July 24, 2023 – Plaintiff requested respite from Officer Arriola at 10:30 a.m. and instructed him to pass along his request to the sergeant.  Plaintiff received no response to his request and no respite on this day.  *Id.*

- July 25 and 26, 2023 – Plaintiff requested respite each of these two days around the morning count-time from 9:45 to 10:15 a.m.  An unknown sergeant informed Plaintiff that no escort was available.  *Id.*

- July 27, 2023 – At 10:15 a.m., Plaintiff was informed by an unknown official that there was no availability in respite in Building 12 but that the official would let Plaintiff know when there was room.  The officer, however, never provided Plaintiff with a status update.  Plaintiff was later informed that no escort was available due to understaffing.  Lastly, Plaintiff writes: "no respite showers."  *Id.*

- July 28, 2023 – Plaintiff did not receive respite because no escort was available due to understaffing.  *Id.*

- July 29, 2023 – Plaintiff requested respite from Sergeant Garcia at 11:45 a.m.  Garcia responded that no escorts were available.  *Id.*

- July 30, 2023 – Plaintiff requested respite from Officer Oliveres during the morning count.  Officer Oliveres responded that no escorts were available.  *Id.*

### 6. Plaintiff's allegations regarding his lack of access to the "full respite program."

Plaintiff alleges that his G5 custody status requires him to sit on a stool in a 3 x 3 foot cage when placed in respite. (Doc. No. 10, p. 11.) Plaintiff, therefore, was placed in a small cage each time he was afforded respite, with one exception occurring on July 18, 2023 when he was placed in an air-conditioned medical cell and allowed to lie down. *Id.* at 11, 13. Warden Sanchez, Warden Holmes, and Warden Amonett enforced this policy where inmates in G5 status must be placed in a 3 x 3 foot cell. *Id.* at 11. Plaintiff states he was harmed by being placed in the cage because there is no way to elevate or lengthen his swollen left leg due to his diabetic condition and lymphedema. (Doc. No. 6, p. 10.). Plaintiff further states that his diabetic condition caused him to urinate frequently, and that no official was available to escort Plaintiff to the restroom. (Doc. No. 10, p. 12.) Plaintiff, therefore, was allegedly forced to empty his water bottle and urinate into the bottle. *Id.* Plaintiff alleges that his diabetic condition causes excessive thirst, and that no official was available to provide him water while he was confined in the 3 x 3 foot cage. *Id.* According to Plaintiff, his injuries caused by the lack of access to the "full respite program" included heat cramps, palpitations, body pains sue to not being able to lay down in the cage, inability to stand, walk, or lift without chest pain, fatigue, impairment of the thermoregulatory system, and impaired circulatory, endocrine, cardiovascular and digestive systems. *Id.* at 12-13. Plaintiff seeks to hold the following officials responsible for failing to enforce the "full respite program" set forth in AD-10.64: Warden Sanchez; Warden Holmes; Warden Amonett; Warden Samaniego; Warden Flannel; Sergeant Perez; Sergeant Jimenez; Sergeant Gonzalez-Diaz; and Lieutenant Cavazos. *Id.* at 8.

Plaintiff states that he "was afforded access to an air conditioned environment due to litigation." (Doc. No. 10, p. 13.)  Plaintiff provides no other details regarding this access.  He acknowledges that, since June 27, 2023, he has been provided access to four to five cold showers per week and that "[c]old water was available most of the time in [his] housing area."  *Id.*

Without providing any specific dates, Plaintiff states that McConnell Unit officers never performed wellness checks.  (Doc. No. 10, p. 6.)  Plaintiff then indicates that no offers of cold showers meant no wellness checks, indicating that such offers constituted the definition of a wellness check.  *Id.*  Plaintiff believes that senior level officials such as the wardens and lower level supervisors such as the sergeants are responsible for ensuring that wellness checks were performed.  *Id.*  According to Plaintiff, his injuries caused by the lack of wellness checks included chest pains, fatigue, dizziness, heat cramps, labored breathing, inability to sweat properly, insomnia, palpitations, impairment of the thermoregulatory system, impaired respiratory, impaired cardiovascular, and impaired digestive systems.  *Id.*

Plaintiff holds the following officials responsible for failing to ensure that adequate space was available for all inmates requesting respite: Warden Sanchez; Warden Holmes; Warden Amonett; Warden Samaniego; and Warden Flannel.  (Doc. No. 10, p. 7.)  According to Plaintiff, his injuries caused due to the lack of available space included labored breathing, palpitations, insomnia, shortness of breath, heat cramps, chest pains, dizziness, fatigue, inability to sweat properly, impairment of the thermoregulatory system, and impaired respiratory, circulatory, endocrine, cardiovascular and digestive systems.  *Id.*

Plaintiff holds the following officials responsible for failing to ensure that escorts were available when Plaintiff requested respite: Warden Sanchez; Warden Holmes; Warden Amonett; Warden Samaniego; Warden Flannel; Sergeant Perez; Sergeant Jimenez; Sergeant Gonzalez-

Diaz; and Lieutenant Cavazos.  (Doc. No. 10, p. 7.)  According to Plaintiff, his injuries caused due to the lack of available escorts included palpitations, chest pains, labored breathing, heat cramps, dizziness, inability to sweat properly, insomnia, shortness of breath, impairment of the thermoregulatory system, and impaired respiratory, circulatory, endocrine, cardiovascular and digestive systems.  *Id.*

### 7.  *Plaintiff's allegations regarding supervisory officials' failure to train staff.*

Plaintiff states that Warden Sanchez, Warden Holmes, Warden Amonett, Warden Samaniego, and Warden Flannel are responsible for failing to train subordinates during the summer heat conditions of 2022 and 2023.  (Doc. No. 10, p. 9; Doc. No. 11, p. 1.)  Plaintiff alleges that these defendants failed to ensure he would receive the "full respite program," including access to an air-conditioned environment upon request at all times.  *Id.*  Plaintiff cites the following alleged deficiencies in training:

- There was no academic grading or testing to confirm the staff's understanding of AD-10.64;

- There were no goals set for staff to ensure compliance with AD-10.64;

- No corrective actions were in place when staff failed to comply with AD-10.64;

- Supervisory officials failed to train staff on how to implement AD-10.64 with respect to accommodating inmates with physical and mental disabilities;

- Supervisory officials failed to train staff on how to report incidents related to excessive heat temperatures to TDCJ administration as required by AD-10.64;

- Supervisory officials failed to train staff on how to remove distresses inmates from excessive heat conditions in an expeditious manner to receive medical treatment as required by AD-10.64;

- Supervisory officials failed to train staff to identify inmates susceptible to temperature-related illnesses due to their medical conditions, as required by AD-10.64;

- Supervisory officials failed to train staff on how to conduct wellness checks, such as asking pertinent questions to determine whether an inmate needed medical attention based on reported heat-related symptoms, as required by AD-10.64;

- Supervisory officials failed to train staff on how to monitor and seek care for inmates requesting medical assistance or exhibiting signs of illness due to excessive heat temperatures, as required by AD-10.64;

- Supervisors failed to train staff to immediately notify health care staff and the unit risk managers regarding cases of injuries resulting from excessive heat, as required by AD-10.64;

- Supervisors failed to train staff on how to evaluate inmates suffering from heat-related illnesses, including their water intake, location, and current activity before becoming ill, as required by AD-10.64;

- The unit administration failed to train, through the unit risk manager, that offenders like Plaintiff who are not assigned to work are trained on excessive heat condition, as required by AD-10.64; and

- Supervisors failed to provide peer education training with respect to excessive heat, as required by AD-10.64.

(Doc. No. 11, pp. 2-4.)

### 8. *Plaintiff's allegations regarding supervisory officials' failure to train staff.*

In his response to the Questionnaire, Plaintiff initially held the following officials responsible for failing to supervise staff regarding the implementation of AD-10.64: Warden Sanchez; Warden Holmes; Warden Amonett; Warden Samaniego; Warden Flannel; Lieutenant Cavazos; Sergeant Perez; Sergeant Jimenez; and Sergeant Gonzalez-Diaz.  (Doc. No. 10, p. 10.) Plaintiff clarified in his amendment to his response that he only seeks to hold the following officials responsible on this issue: Warden Sanchez; Warden Holmes; Warden Amonett; Warden Samaniego; and Warden Flannel.  (Doc. No. 11, pp. 1, 5.)  Plaintiff alleges that these defendants failed to supervise staff in the following respects:

- Supervisors failed to supervise staff on monitoring staff on monitoring and caring to inmates requesting medical assistance or exhibiting signs of illness during periods of excessive heat, as required by AD-10.64;

- Supervisors failed to supervise staff on how to mitigate injuries suffered by inmates during the excessive heat, such as reducing their temperature by placing them in a cool area (respite), as required by AD-10.64;

- Supervisors failed to supervise staff on reporting incidents and injuries related to excessive heat to the Emergency Action Center in accordance with AD-02.15[1] and AD-10.64; and

- Supervisors failed to supervise staff to ensure that all heat-related illnesses were evaluated and reported by staff to include the inmate's conditions, including water

---

[1]  Plaintiff states that AD-02.15 is "Operations of the Emergency Action Center and Reporting Procedures for Serious or Unusual Incidents."  (Doc. No. 11, p. 5.)

intake, location, and the inmate's activities before becoming ill, as required by

AD-10.64.

*Id.* at 5-6.

### 9. Plaintiff's allegations regarding inadequate medical care.

Plaintiff submitted sick call requests, related to his symptoms and complications from

exposure to excessive heat, to the McConnell Unit medical department on the following dates:

In 2022: March 28; April 12; May 9; May 12; May 15; May 30; June 2; June 6;

June 8; June 11; June 12; June 15; June 18; June 21; June 23; June 26; July 6; July

13; July 14; July 18; and August 2.

In 2023: March 30.

(Doc. No. 10, p. 14.)  In these sick call requests, Plaintiff reported the following symptoms:

palpitations; chest pains; lightheadedness; dizziness; shortness of breath; labored breathing; heat

cramps; inability to sweat properly; trouble concentrating; inability to stand, walk, or lift without

feeling chest pains during the excessive heat; fatigue; trouble sleeping; impairment of the

thermoregulatory system; and impaired respiratory, circulatory, endocrine, cardiovascular and

digestive systems.  *Id.*  Plaintiff never made any requests for specific medical treatments in

connection with his sick call requests, as he expected medical personnel to know what to do.  *Id.*

According to Plaintiff, Dr. Kwarteng reviewed multiple sick call requests.  (Doc. No. 6,

p. 18.).  Dr. Kwarteng responded to five sick call requests in writing.  (Doc. No. 10, pp. 15-16.)

Plaintiff claims that Dr. Kwarteng never performed any examinations on Plaintiff or provided

any treatments.  *Id.* at 16.  His written responses to five sick call requests are as follows:

- June 6, 2022: "You have been assigned appropriate medical restrictions.  *Id.* at 15.

- June 6, 2022: "You have all heat restrictions, you can always ask for respite."  *Id.*

- June 23, 2022: "You have all the medical restrictions based on your medical and other conditions.  The medical department does not assign inmates to special housing areas."  *Id.*

- July 14, 2022: "Medical Dept[.] does not control respite.  Please direct your concerns to TDCJ."  *Id.*

- August 2, 2022: "1. You have heat restrictions[.]  2. You can also ask to be taken out for respite[.]  3. Stay hydrated."  *Id.*

Plaintiff states that, on April 13, 2023, he submitted a Step 1 grievance requesting medications for his hallucinations, delusions, schizophrenia condition, panic attacks, and inability to think and sleep during the excessive heat.  (Doc. No. 10, p. 18.)  Plaintiff, however, was allegedly not seen by Dr. Morton until August 16, 2023.  *Id.*  Dr. Morton prescribed Plaintiff with Haldol, a drug Plaintiff alleges is used to treat schizophrenia.  *Id.*  However, from April through August 2023, Plaintiff's thermoregulatory system was allegedly impaired in that he could not maintain a normal body temperature during the excessive heat.  *Id.*

In a Step 1 grievance dated July 14, 2023, Plaintiff complained about the failure of prison officials to comply with AD-10.64, including denial of access to the respite program upon request.  (Doc. No. 11-2, pp. 2-3.)  Plaintiff further claimed that such failures caused him to suffer numerous symptoms related to excessive heat exhaustion, especially as exacerbated by his diabetes condition.  *Id.*  In a response dated August 22, 2023 to the Step 1 grievance, the reviewing officer noted that Plaintiff was seen by the medical provider and that he voiced no medical complaints at that time.  *Id.* at 3. The reviewing officer further found that: (1) in the last 30 days, Plaintiff's vital signs had been reported by medical to be within normal limits; (2) on August 15, 2023, following a complaint of chest pain, Plaintiff reported to medical that he was

fine because he was in an air-conditioned environment; (3) Plaintiff was seen on August 17,

2023 in medical where he was advised to address respite issues with security officials; (4) on

August 17, 2023, the "psych provider," presumably Dr. Morton, started Plaintiff on medication

even though there was no mention of a schizophrenia diagnosis; and (5) Plaintiff has refused

further evaluations "by Ortho, and brace and limb." *Id.*

### D. Plaintiff's construed legal claims and request for relief.

Based on his statements in his amended complaint and response to the Questionnaire as

amended, and based also on the Court's liberal construction of his claims, Plaintiff alleges that

Defendants have violated his Eighth Amendment constitutional rights as well as his rights under

the ADA and RA.  Liberally construed, the undersigned understands Plaintiff's claims in this

action against each defendants to be the following:

- Warden Holmes acted with deliberate indifference in his individual capacity to

    Plaintiff's serious medical needs by failing to: (1) comply with the requirements

    of AD-10.64 and instead promulgating policies inconsistent with AD-10.64,

    which failed to ensure Plaintiff had access to the "full respite program" on request

    (Doc. No. 6, pp. 8-9; Doc. No. 10, pp. 5-8, 10); (2) train subordinate officials with

    respect to AD-10.64 (Doc. No. 6, pp. 8-9; Doc. No. 10, p. 9; D.E. 11, pp. 1-6);

    and (3) supervise subordinate officials to ensure adherence with AD-10.64.  (Doc.

    No. 6, pp. 8-9; Doc. No. 10, p. 10; Doc. No. 11, pp. 1-6)  Warden Holmes further

    violated Plaintiff's ADA and RA rights in his official capacity by: (1) denying

    him access to the "Full Respite Program" under AD-10.64 solely by reason of his

    disabilities and impairments; and (2) failing to provide him with reasonable

accommodation under the "full respite program" for his disabilities and consequential limitations.  (Doc. No. 6, pp. 10-11.)

- Warden Sanchez acted with deliberate indifference in his individual capacity to Plaintiff's serious medical needs by failing to: (1) comply with the requirements of AD-10.64 and instead promulgating policies inconsistent with AD-10.64, which failed to ensure Plaintiff had access to the "full respite program" on requests made between April 2022 and August 2022 (Doc. No. 6, pp. 12-13; Doc. No. 10, pp. 5-8, 10); (2) train subordinate officials with respect to AD-10.64 (Doc. No. 6, pp. 12-13; Doc. No. 10, p. 9; Doc. No. 11, pp. 1-6); and (3) supervise subordinate officials to ensure adherence with AD-10.64.  (Doc. No. 6, pp. 12-13; Doc. No. 10, p. 10; Doc. No. 11, pp. 1-6.)  Warden Sanchez further violated Plaintiff's ADA and RA rights in his official capacity by: (1) denying him access to the "full respite program" under AD-10.64 solely by reason of his disabilities and impairments; and (2) failing to provide him with reasonable accommodation under the "full respite program" for his disabilities and consequential limitations. (Doc. No. 6, pp. 14.)

- Warden Flannel acted with deliberate indifference in her individual capacity to Plaintiff's serious medical needs by failing to: (1) comply with the requirements of AD-10.64 and instead promulgating policies inconsistent with AD-10.64, which fail to ensure Plaintiff has access to the "full respite program" on request (Doc. No. 10, pp. 5-8, 10); (2) train subordinate officials with respect to AD-10.64 (Doc. No. 10, p. 9; Doc. No. 11, pp. 1-6); and (3) supervise subordinate officials to ensure adherence with AD-10.64.  (Doc. No. 10, p. 10; Doc. No. 11,

pp. 1-6).  Warden Flannel further violated Plaintiff's ADA and RA rights in her

official capacity by failing to provide Plaintiff with reasonable accommodation

for his disabilities and allowing him to suffer inside a small cage.  (Doc. No. 6, p.

14.)

- Warden Samaniego acted with deliberate indifference in his individual capacity to

Plaintiff's serious medical needs failing to: (1) comply with the requirements of

AD-10.64 and instead promulgating policies inconsistent with AD-10.64, which

fail to ensure Plaintiff has access to the "full respite program" on request (Doc.

No. 6, p. 15; Doc. No. 10, pp. 5-8, 10); (2) train subordinate officials with respect

to AD-10.64 (Doc. No. 6, p. 15; Doc. No. 10, p. 9; Doc. No. 11, pp. 1-6); and (3)

supervise subordinate officials to ensure adherence with AD-10.64.  (Doc. No. 6,

p. 15; Doc. No. 10, p. 10; Doc. No. 11, pp. 1-6).  Warden Samaniego further

violated Plaintiff's ADA and RA rights in his official capacity by denying him

access to the "Full Respite Program" under AD-10.64 solely by reason of his

disabilities and impairments.  (Doc. No. 6, p. 16.)

- Dr. Kwarteng acted with deliberate indifference in his individual capacity to

Plaintiff's serious medical needs related to his susceptibility to and symptoms

caused by excessive heat by: (1) failing to prescribe medications or adjust current

medications to mitigate or ameliorate Plaintiff's symptoms; (2) refusing to treat

Plaintiff for his reported symptoms and complications.  *Id.* at 18-19.  Dr.

Kwarteng further violated Plaintiff's ADA and RA rights in his official capacity

by (1) denying him access to the "Full Respite Program" under AD-10.64 solely

by reason of his disabilities and impairments; and (2) failing to provide him with

reasonable accommodation under the "Full Respite Program" for his disabilities and consequential limitations.  (Doc. No. 6, p. 14.)

- Director Lumpkin and Executive Director Collier, sued in their official capacities, violated Plaintiff's ADA and RA rights as liable for the misconduct of their subordinates under a theory of *respondeat superior*.  (Doc. No. 6, p. 20.)  These defendants also failed to implement policies for disabled inmates in closed custody with respect to AD-10.64, in violation of the ADA.  *Id.*

- "The State of Texas violated Plaintiff's rights under the ADA/RA."  *Id.*

- Warden Amonett acted with deliberate indifference in his individual capacity to Plaintiff's serious medical needs by failing to: (1) comply with the requirements of AD-10.64 and instead promulgating policies inconsistent with AD-10.64, which fail to ensure Plaintiff has access to the "full respite program" on request (Doc. No. 6, p. 20; Doc. No. 10, pp. 5-8, 10); (2) train subordinate officials with respect to AD-10.64 (Doc. No. 6, p. 20; Doc. No. 10, p. 9; Doc. No. 11, pp. 1-6); and (3) supervise subordinate officials to ensure adherence with AD-10.64.  (Doc. No. 6, p. 20; Doc. No. 10, p. 10; Doc. No. 11, pp. 1-6).  Warden Amonett further violated Plaintiff's ADA and RA rights in his official capacity by: (1) denying him access to the "Full Respite Program" under AD-10.64 solely by reason of his disabilities and impairments; and (2) failing to provide him with reasonable accommodation under the "Full Respite Program" for his disabilities and consequential limitations.  (Doc. No. 6, p. 20.)

- Dr. Morton acted with deliberate indifference in his individual capacity to Plaintiff's serious medical needs related to symptoms associated with mental

health issues and exposure to excessive heat by delaying treatment, including requested medication, from the time he submitted a Step 1 grievance on April 17, 2023 until Dr. Morton treated Plaintiff on August 16, 2023.  (Doc. No. 10, p. 18.) Dr. Morton further violated Plaintiff's ADA and RA rights by denying him access "to the services, benefits, activities, and programs because of an and solely by reason of Plaintiff's schizophrenia" and failing to ensure Plaintiff received appropriate housing during periods of excessive heat conditions.  (Doc. No. 10, p. 19.)

- Sergeant Perez, Sergeant Jimenez, and Sergeant Gonzalez-Diaz each acted with deliberate indifference to Plaintiff's serious medical needs when they failed to comply with AD-10.64 by denying or delaying Plaintiff access to the "full respite program" upon Plaintiff's requests for respite.  (Doc. No. 10, pp. 4-8.)[2]  Plaintiff also claims these defendants violated his Eighth Amendment rights in their supervisory capacities by failing to supervise their subordinates regarding the implementation of AD-10.64.  *Id.* at 8.  According to Plaintiff, these three defendants further violated Plaintiff's ADA and RA rights in their official capacities by denying him access to the "Full Respite Program" under AD-10.64 solely by reason of his disabilities and impairments.  (Doc. No. 6, p. 30.)

---

[2] In his amended complaint, Plaintiff did not specifically assert Eighth Amendment claims against Sergeant Perez, Sergeant Jimenez, and Sergeant Gonzalez-Diaz.  *See* Doc. No. 6.  Upon careful review of his response to the Questionnaire, the Court liberally construes that pleading as raising Eighth Amendment deliberate indifference claims against these defendants in their individual capacities.  But as discussed below in the main text, the undersigned recommends dismissal of those claims.

- Lieutenant Cavazos acted with deliberate indifference to Plaintiff's serious medical needs when he failed to comply with AD-10.64 by denying or delaying Plaintiff access to the "full respite program" upon Plaintiff's requests for respite. (Doc. No. 10, pp. 7-8.)[3]  Lieutenant Cavazos further violated Plaintiff's ADA and RA rights in his official capacity by denying him access to the "Full Respite Program" under AD-10.64 solely by reason of his disabilities and impairments. (Doc. No. 6, p. 30.)

Plaintiff seeks monetary relief consisting of $500,000 in compensatory damages and unspecified punitive damages.  (Doc. No. 6, p. 4.)  Implicit in his amended complaint and response to the Questionnaire are requests for injunctive relief in the form of access to the full respite program, which includes upon request unlimited access to an air-conditioned environment without being placed in a 3 x 3 foot cage.  *See* Doc. Nos. 6 and 10.[4]

### E.  Legal standards.

#### 1.  Screening.

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A.  A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable

---

[3]  In his amended complaint, Plaintiff also did not specifically assert an Eighth Amendment claim against Lieutenant Cavazos.  *See* Doc. No. 6.  Upon careful review of his response to the Questionnaire, the Court liberally construes that pleading as raising an Eighth Amendment deliberate indifference claim against Lieutenant Cavazos in his individual capacity.  But as discussed below in the main text, the undersigned recommends dismissal of that claim.

[4]  In various grievances attached to his Amended Complaint, Plaintiff specifically asks for relief in the form of transfer to a cell with air conditioning or transfer to another unit that can support his heat restrictions.  (Doc. No. 6, pp. 23, 27.)

basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Id.* Therefore, the Court "should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that the defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

Pleadings filed by *pro se* litigants like Plaintiff are construed using a less stringent standard of review. Documents filed by *pro se* litigants are to be liberally construed, and *pro se* complaints, however inartfully drafted they might be, are held to less stringent standards than formal pleadings drafted by lawyers. *See Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Estelle v. Gamble*, 429 U.S. 97,

106 (1976). A plaintiff's well-pleaded factual allegations in the complaint are to be taken as true for purposes of screening, but such deference does not extend to conclusory allegations, unwarranted factual inferences, or legal conclusions. *DeMarco v. Davis*, 914 F.3d 383, 386-87 (5th Cir. 2019).

### 2. Section 1983.

Section 1983 of Title 42, United States Code, provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004); *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he or she misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

Several of the defendants sued in their individual capacities in this case are supervisory officials. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under § 1983. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). "Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. A plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at

26 / 75

676.  Thus, a supervisory official may be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).  Supervisory liability without overt personal participation in the offensive act thus can lie only if the supervisory official "implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind the constitutional violation." *Thompkins*, 828 F.2d at 304 (internal quotations omitted).  "A policy is normally an official statement, ordinance, or regulation, but in certain circumstances a persistent, widespread practice that is so commonplace as to constitute a custom can also be treated as policy." *McNeil v. Caruso*, No. 17-01688, 2019 WL 1435831, at *2 (M.D. La. Mar. 28, 2019) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

To the extent claims against supervisory officials are based on a failure to train or supervise, "the Fifth Circuit has held that a plaintiff must show that (1) the supervisor either failed to supervise or train the subordinate officials; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Brown v. Gonzales*, No. 2:23-CV-068-Z-BR, 2024 WL 780452, at *4 (N.D. Tex. Jan. 26, 2024), *adopted*, 2024 WL 779240 (N.D. Tex. Feb. 26, 2024) (citing *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008)); *see also Porter*, 659 F.3d at 446 (explaining that a plaintiff seeking to establish "supervisory liability for constitutional violations committed by subordinate employees … must show that the supervisor acted, or failed to act, with *deliberate indifference*, to violations of others' constitutional rights committed by their subordinates") (cleaned up) (emphasis in original).  Deliberate indifference in this context, therefore, requires "a conscious choice to endanger constitutional rights" and the proof of

27 / 75

deliberate indifference requires more than a single instance of the lack of training or supervision causing a violation of constitutional rights."  *Mesa*, 543 F.3d at 274.  A claim of failure to train or supervise "presupposes an underlying constitutional violation."  *Brown*, 2024 WL 780452, at *5 (citing *Perryman v. Bloomfield*, 69 F. App'x 659 (5th Cir. 2003)).

### F.  Discussion.

#### 1.  Eighth Amendment.

Liberally construed, Plaintiff alleges that multiple defendants acted with deliberate indifference" to his serious medical needs with respect to the excessive heat condition in 2022 and 2023, in violation of the Eighth Amendment.  (Doc. No. 6, pp. 8-9, 12-13, 15, 18-20; Doc. No. 10, pp. 4-8, 18; Doc. No. 11, pp. 1-6.)  These defendants include Sergeant Perez, Sergeant Jimenez, Sergeant Gonzalez-Diaz, Lieutenant Cavazos, Warden Holmes, Warden Amonett, Warden Sanchez, Warden Flannel, Warden Samaniego, Dr. Kwarteng, and Dr. Morton, all in their individual capacities.  (*See* Doc. 6.)  Plaintiff's allegations regarding these individual-capacity defendants is that they exhibited deliberate indifference to Plaintiff's serious medical needs by: (1) denying Plaintiff access to the "full respite program" as required by AD-10.64; (2) promulgating policies contrary to AD-10.64; (3) failing to train subordinate officials with respect to AD-10.64; and (4) failing to supervise subordinate officials to ensure adherence with AD-10.64.  From the individual-capacity defendants, Plaintiff seeks an aggregate sum of $500,000 in compensatory damages and unspecified punitive damages. (Doc. No. 6, p. 4.)

##### a.  Law.

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the

conditions under which he is confined are subject to scrutiny under the Eighth Amendment."
*Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (*per curiam*) (internal quotations omitted)).  The Eighth Amendment's prohibition is made applicable to the States by the Fourteenth Amendment.  *Robinson v. California*, 370 U.S. 660, 666-67 (1962).

Prison officials must provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992).  Extreme temperatures in prison can violate the Eighth Amendment.  *Yates v. Collier*, 868 F.3d 354, 360 (5th Cir. 2017); *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015); *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004).

"To be tantamount to the infliction of cruel and unusual punishment, prison conditions must pose an unreasonable risk of serious damage to a prisoner's health – an objective test – and prison officials must have acted with deliberate indifference to the risk posed – a subjective test."  *Ball*, 792 F.3d at 592 (internal quotation marks omitted) (Eighth Amendment was violated when prisoners who were being treated for hypertension and diabetes were held in very hot cells without sufficient access to heat-relief measures); *see also Webb v. Livingston*, 618 F. App'x 201, 208-09 (5th Cir. 2015) (inmates with heat-sensitive medical conditions who were housed in cells where the temperature exceeded 100 degrees had asserted facts that, if proven, would overcome qualified immunity).

Throughout his filings, Plaintiff claims that various defendants have violated AD-10.64, purportedly[5] a TDCJ directive that calls for certain heat mitigation measures during times of hot weather.  *E.g.*, Doc. No. 6, pp. 8, 12.  A violation of prison policy, without more, does not give rise to a viable civil rights claim, if constitutional minima are otherwise met.  *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).  Therefore, in this case Plaintiff must plausibly allege more than a mere violation of the directive – he must plausibly allege conditions themselves that present an unreasonable risk of serious damage to his health.

To survive screening of an Eighth Amendment conditions of confinement claim, a plaintiff must plausibly allege that the alleged violation was sufficiently serious – that is, that it deprived him of the most minimal level of life's necessities and that prison officials acted with deliberate indifference to his health or safety.  *Farmer*, 511 U.S. at 847.  A viable claim of unconstitutional prison conditions must plausibly allege that there is a "substantial risk of serious harm."  *Gates*, 376 F.3d at 333.  An inmate need not show that a death or serious injury already has occurred but rather that there is a "substantial risk of serious harm."  *Ball*, 792 F.3d at 593 (citing *Gates*, 376 F.3d at 333).  "Without the requisite proof of both subjective and objective components of an Eighth Amendment violation, however, merely 'uncomfortable' heat in a prisoner's cell does not reflect a 'basic human need that the prison has failed to meet' and is not constitutionally suspect."  *Id.* at 592 (citing *Woods*, 51 F.3d at 581).

"Deliberate indifference is an extremely high standard to meet."  *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001).  The Fifth Circuit has "consistently recognized . . . that 'deliberate indifference cannot be inferred merely from a negligent or even a

---

[5]  "Purportedly," because Plaintiff has not submitted a copy of AD-10.64, and a current version of that document does not appear to be publicly available online.  For purposes of screening, the undersigned takes as true Plaintiff's allegation of AD-10.64's existence and his assertions as to its provisions.

grossly negligent response to a substantial risk of serious harm.'" *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 458-59 (5th Cir. 2001)); *see also Aguirre v. City of San Antonio*, 995 F.3d 395, 420 (5th Cir. 2021) ("Negligence or even gross negligence is not enough: the officials must have actual knowledge of the substantial risk").

Thus, to survive screening, Plaintiff's claim of each defendant's liability must plausibly allege nonconclusory facts indicating either that the relevant defendant personally participated in the violation of Plaintiff's rights or that the defendant had subjective knowledge that Plaintiff faced a substantial risk of harm to his health and safety and then disregarded that risk. *See Valentine v. Collier*, 993 F.3d 270, 281 (5th Cir. 2021); *Cook v. Crow*, No. 1:20-CV-85, 2021 WL 6206795, at *3 (E.D. Tex. July 26, 2021), *adopted*, 2022 WL 23169 (E.D. Tex. Jan. 3, 2022) (citing *Farmer*, 511 U.S. at 840-41, and *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) (plaintiff must plausibly allege that each defendant was "aware of an excessive risk to the plaintiff's health or safety, and yet consciously disregarded the risk."). Plaintiff must allege that the relevant defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that the defendant also actually drew that inference. *See Domino*, 239 F.3d at 755.

A defendant's subjective knowledge could be plausibly alleged in a number of ways, including inference from circumstantial evidence of which the defendant is aware, and under exceptional circumstances a defendant's knowledge of a substantial risk of harm may be inferred by the obviousness of the risk, if that official is aware of the facts from which that inference could be drawn. *See Domino*, 239 F.3d at 755; *Farmer*, 511 U.S. at 842; *Easter v. Powell*, 467

F.3d 459, 463 (5th Cir. 2006).  But the failure to alleviate a significant risk that an official should have perceived, but did not, does not constitute deliberate indifference.  *Farmer*, 511 U.S. at 838.

### b. *Individual-capacity defendants – deliberate indifference.*

With respect to his deliberate indifference claims, Plaintiff sues only certain defendants in their individual capacities.  Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976).  Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment.  *Id.* at 104-05.  In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted).  Delay in treatment may be actionable under § 1983 only if there has been deliberate indifference and the delay results in substantial harm.  *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir.1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Here, some of Plaintiff's individual-capacity claims – but not all – are sufficient to survive screening.

### i. *Sergeant Jimenez.*

Plaintiff alleges that Sergeant Jimenez violated his Eighth Amendment rights when he: (1) denied all of Plaintiff's requests for access to respite due to the lack of availability of staff to escort him to an air-conditioned location; and (2) failed to ensure that escorts were available

when Plaintiff requested respite.  (Doc. No. 10, pp. 5, 7.)  In denying his respite requests,

Plaintiff alleges, Sergeant Jimenez effectively denied him access to the "full respite program."

*Id.* at 8.  Plaintiff also claims that Sergeant Jimenez violated his Eighth Amendment rights in his

supervisory capacity by failing to supervise subordinates regarding the implementation of AD-

10.64.  *Id.*

      "Personal involvement is an essential element of a civil rights cause of action,"

*Thompson*, 709 F.2d at 382, and there is no vicarious or respondeat superior liability of

supervisors under § 1983.  *Thompkins*, 828 F.2d at 303-04; *see also Ford v. Anderson Cnty.,*

*Tex.*, 90 F.4th 736, 764-65 (5th Cir. 2024).  "Each Government official, his or her title

notwithstanding, is only liable for his or her own misconduct."  *Iqbal*, 556 U.S. at 677.  A

plaintiff "must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution."  *Id.* at 676.  Thus, a supervisory official may

be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional

deprivation, or (2) he implements unconstitutional policies that causally result in the

constitutional injury."  *Porter*, 659 F.3d at 446; *see also Johnson v. Harris Cnty.*, 83 F.4th 941,

946 (5th Cir. 2023) (citing *Peña v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018)

(to establish supervisory liability for constitutional violations committed by subordinate

employees, plaintiff must show that supervisor acted, or failed to act, with deliberate indifference

to violations of constitutional rights committed by subordinates)).

      According to Plaintiff, the "full respite program" under AD-10.64 consists "of unlimited

iced water, unlimited cold showers throughout the day … [,] and unlimited access to air-

conditioned environments upon request(s)."  (Doc. No. 10, p. 5.)  Plaintiff's allegations reflect

that: (1) he suffers from numerous mental and physical health conditions which make him

susceptible for excessive heat conditions; (2) he takes medications which also make him susceptible to excessive heat conditions; (3) he has several heat restrictions in place; and (4) he communicated every day with Sergeant Jimenez and made multiple requests to him to be placed in an air-conditioned environment.  (Doc. No. 10, pp. 2-4.)  Plaintiff alleges that he suffered from numerous serious medical issues when he was denied air-conditioned respite in excessive heat conditions or was delayed access to respite, including impairments to his respiratory, circulatory, endocrine, and cardiovascular systems.  *Id.* at 7-8, 10, 12.  Plaintiff's allegations reference two occasions when Sergeant Jimenez personally responded to Plaintiff's requests for respite:

- On July 5, 2023 at 9:09 a.m., Sergeant Jimenez was made aware of Plaintiff's request for air-conditioned respite by another officer but acknowledged to Plaintiff that the delay in bringing Plaintiff to respite until 4:50 p.m. that day was caused by understaffing.  (Doc. 10-1, p. 3.)

- On July 13, 2023, Plaintiff requested respite during the morning count.  Sergeant Jimenez later approached Plaintiff's cell at 3:00 p.m. and told Plaintiff he would escort Plaintiff to respite when he completed some unspecified task.  *Id.* at 5.

Plaintiff alleges sufficient circumstances, especially given his allegedly serious medical issues and his daily interaction with Sergeant Jimenez, from which it can be inferred that Sergeant Jimenez was subjectively aware of Plaintiff's serious medical conditions and his susceptibility to excessive heat during Texas' summer months.  *See Domino*, 239 F.3d at 755. The undersigned does not find that Plaintiff has alleged facts sufficient to plausibly claim that his medical conditions were so serious, open, and apparent that the risk of substantial harm to his health was obvious.  Nor does Plaintiff allege sufficient facts indicating direct evidence of Sergeant Jimenez's subjective knowledge of Plaintiff's medical conditions or risk to Plaintiff's

health.  Rather, the undersigned's finding, for purposes of screening, is merely that Plaintiff has alleged sufficient facts from which Sergeant Jimenez's subjective knowledge of the risk can be inferred.

But Plaintiff fails to allege a viable claim for a different reason: he fails to plausibly allege that Sergeant Jimenez – even if he could be viewed as being subjectively aware of Plaintiff's medical condition – then acted with deliberate indifference to Plaintiff's health on the two occasions for which Plaintiff seeks to hold him liable.  His allegations indicate that, far from denying Plaintiff's requests for respite, Sergeant Jimenez was simply prevented from granting Plaintiff's July 5 request by the lack of available staff.  And Sergeant Jimenez even offered to escort Plaintiff personally to respite on July 13, according to Plaintiff.  Plaintiff makes no allegation that Sergeant Jiminez was insincere in his proffered reason for being unable to honor Plaintiff's respite requests or that he was deliberately disregarding Plaintiff's medical needs.  Plaintiff's claim against Sergeant Jimenez in this regard should therefore be dismissed.  *See Valentine*, 993 F.3d at 281; *Cook*, 2021 WL 6206795, at *3.

With regard to Sergeant Jimenez's supervisory role, Plaintiff provides no specific facts to indicate that he had authority over staffing decisions or that any subordinate's decision to deny or delay respite for Plaintiff could be attributable to Sergeant Jimenez as deliberate indifference.  Plaintiff further alleges no specific facts that Sergeant Jimenez put into place an unconstitutional policy regarding access to respite.  Accordingly, Plaintiff fails to state a plausible Eighth Amendment claim against Sergeant Jimenez based on his participation in the alleged events in his supervisory capacity.

To the extent that Plaintiff's Eighth Amendment claim can be liberally construed as alleging that Sergeant Jimenez also violated Plaintiff's rights by failing to ensure Plaintiff was

provided the "full respite program," that claim should be dismissed. This allegation is nothing more than a claim that Plaintiff's Eighth Amendment rights were violated because all the provisions of AD-10.64 were not strictly complied with. But as discussed above, violation of a prison regulation, without more, does not give rise to a viable civil rights claim if constitutional minima are nevertheless met. *See Myers*, 97 F.3d at 94. Plaintiff's claim, rather than viably standing on its own, therefore folds back into his other Eighth Amendment deliberate indifference claim against Sergeant Jimenez – the undersigned has concluded that Plaintiff fails to make a plausible allegation. Additionally, Plaintiff fails to plausibly allege that Sergeant Jimenez possessed policymaking authority to direct and implement the "full respite program" at the McConnell Unit. In other words, Plaintiff offers nothing to suggest alleges that this defendant has the authority to set policy regarding access to respite. Because Plaintiff does not plausibly allege that Sergeant Jimenez implemented an unconstitutional policy by failing generally to ensure access to the "full respite program," his claim for individual liability in that regard should be dismissed.

To recap:

- The district court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim against Sergeant Jimenez in his individual capacity for his alleged participation in denying or delaying Plaintiff immediate access to respite on July 5 and 13, 2023.

- The district court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim of supervisory liability against Sergeant Jimenez in his individual capacity because Plaintiff alleges no specific facts that Sergeant Jimenez put into place an unconstitutional policy regarding access to respite.

● The district court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim against Sergeant Jimenez in his individual capacity to the extent he alleges that he failed to generally ensure access to the "full respite program."

### ii. Sergeant Perez.

Plaintiff alleges that Sergeant Perez violated his Eighth Amendment rights when he: (1) denied all of Plaintiff's requests access to respite due to the lack of availability of staff to escort him to an air-conditioned location; and (2) failed to ensure that escorts were available when Plaintiff requested respite.  (Doc. No. 10, pp. 5, 7.)  In denying his respite requests, Plaintiff alleges Sergeant Perez effectively denied him access to the "full respite program."  *Id.* at 8. Plaintiff also claims Sergeant Jiminez violated his Eighth Amendment rights in his supervisory capacity by failing to supervise their subordinates regarding the implementation of AD-10.64. *Id.*

Plaintiff alleges that he communicated every day with Sergeant Perez and made multiple requests to him to be placed in an air-conditioned environment.  (Doc. No. 10, p. 4.)  Plaintiff allegations reference three days when he personally participated in responding to Plaintiff's requests for respite:

● On July 14, 15, and 16, 2023 (Friday through Sunday), Sergeant Perez confirmed to Plaintiff that no escorts were available to take him to respite each day due to understaffing.  (Doc. 10-1, p. 5.)

Plaintiff alleges sufficient circumstances, especially given his serious medical issues and his daily interaction with Plaintiff, from which it can be inferred Sergeant Perez was subjectively aware of Plaintiff's serious medical conditions and his susceptibility to excessive heat during

Texas summer months.  *See Domino*, 239 F.3d at 755.  The undersigned does not find that Plaintiff has alleged facts sufficient to plausibly claim that his medical conditions were so serious, open, and apparent that the risk of substantial harm to his health was obvious.  Nor does Plaintiff allege sufficient facts indicating direct evidence of Sergeant Perez's subjective knowledge of Plaintiff's medical conditions or risk to Plaintiff's health.  Rather, the undersigned's finding, for purposes of screening, is merely that Plaintiff has alleged sufficient facts from which Sergeant Perez's subjective knowledge of the risk can be inferred.

But as with his claim against Sergeant Jimenez, Plaintiff fails to allege a viable claim for a different reason: he fails to plausibly allege that Sergeant Perez – even if he could be viewed as being subjectively aware of Plaintiff's medical condition – then acted with deliberate indifference to Plaintiff's health on the three occasions for which Plaintiff seeks to hold him liable.  His allegations indicate that, far from denying Plaintiff's requests for respite, Sergeant Perez was simply prevented from granting Plaintiff's requests for respite by the lack of available staff.  Plaintiff makes no allegation that Sergeant Perez was insincere in his proffered reason for being unable to honor Plaintiff's respite requests or that he was deliberately disregarding Plaintiff's medical needs.  Plaintiff's claim against Sergeant Perez in this regard should therefore be dismissed.  *See Valentine*, 993 F.3d at 281; *Cook*, 2021 WL 6206795, at *3.

With regard to Sergeant Perez's supervisory role, Plaintiff provides no specific facts to indicate that he had authority over staffing decisions or that any subordinate's decision to deny or delay respite for Plaintiff could be attributable to Sergeant Perez as deliberate indifference.  Plaintiff further alleges no specific facts that Sergeant Perez put into place an unconstitutional policy regarding access to respite.  Accordingly, Plaintiff fails to state a plausible Eighth

Amendment claim against Sergeant Perez based on his participation in the alleged events in his supervisory capacity.

To the extent that Plaintiff's Eighth Amendment claim can be liberally construed as alleging that Sergeant Perez also violated Plaintiff's rights by failing to ensure Plaintiff was provided the "full respite program," that claim should be dismissed.  This allegation is nothing more than a claim that Plaintiff's Eighth Amendment rights were violated because all the provisions of AD-10.64 were not strictly complied with.  But as discussed above, violation of a prison regulation, without more, does not give rise to a viable civil rights claim if constitutional minima are nevertheless met.  *See Myers*, 97 F.3d at 94.  Plaintiff's claim, rather than viably standing on its own, therefore folds back into his other Eighth Amendment deliberate indifference claim against Sergeant Perez – the undersigned has concluded that Plaintiff fails to make a plausible allegation.  Additionally, Plaintiff fails to plausibly allege that Sergeant Perez possessed policymaking authority to direct and implement the "full respite program" at the McConnell Unit.  In other words, as with Sergeant Jimenez, Plaintiff offers nothing to suggest alleges that this defendant that has the authority to set policy regarding access to respite.  Because Plaintiff does not plausibly allege that Sergeant Perez implemented an unconstitutional policy by failing generally to ensure access to the "full respite program," his claim for individual liability in that regard should be dismissed.

To recap:

- The district court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim against Sergeant Perez in his individual capacity for his alleged participation in denying Plaintiff immediate access to respite on July 14, 15, 16, 2023.

- The district court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim of supervisory liability against Sergeant Perez in his individual capacity because Plaintiff alleges no specific facts that Sergeant Perez put into place an unconstitutional policy regarding access to respite.

- The district court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim against Sergeant Perez in his individual capacity to the extent he alleges that he failed to generally ensure access to the "full respite program."

### iii.  Sergeant Gonzalez-Diaz.

Plaintiff alleges that Sergeant Gonzalez-Diaz violated his Eighth Amendment rights when she: (1) denied all of Plaintiff's requests access to respite due to the lack of availability of staff to escort him to an air-conditioned location; and (2) failed to ensure that escorts were available when Plaintiff requested respite.  (Doc. No. 10, pp. 5, 7.)  In denying his respite requests, Plaintiff alleges, Sergeant Gonzalez-Diaz effectively denied him access to the "full respite program."  *Id.* at 8.  Plaintiff also claims that Sergeant Gonzalez-Diaz violated his Eighth Amendment rights in his supervisory capacity by failing to supervise subordinates regarding the implementation of AD-10.64.  *Id.*

Plaintiff alleges that he communicated every day with Sergeant Gonzalez-Diaz and made multiple requests to her to be placed in an air-conditioned environment.  (Doc. No. 10, p. 4.) Plaintiff allegations reference two occasions when she personally was involved in connection with Plaintiff's requests for respite:

- On July 2, 2023, Plaintiff spoke with Sergeant Gonzalez-Diaz about his request to receive an escort to respite but did not receive respite due to understaffing.  (Doc. 10-1, p. 2.)

- On July 9, 2023, Plaintiff's request for respite at an unknown time was relayed to Sergeant Gonzalez-Diaz.  Plaintiff was subsequently escorted to respite in Building 12 by another officer at 6:16 p.m., where he stayed for over three hours. *Id.* at 3.

Plaintiff alleges sufficient circumstances, especially given his serious medical issues and his daily interaction with Plaintiff, from which it can be inferred Sergeant Gonzalez-Diaz was subjectively aware of Plaintiff's serious medical conditions and his susceptibility to excessive heat during Texas summer months.  *See Domino*, 239 F.3d at 755.  The undersigned does not find that Plaintiff has alleged facts sufficient to plausibly claim that his medical conditions were so serious, open, and apparent that the risk of substantial harm to his health was obvious.  Nor does Plaintiff allege sufficient facts indicating direct evidence of Sergeant Gonzalez-Diaz's subjective knowledge of Plaintiff's medical conditions or risk to Plaintiff's health.  Rather, the undersigned's finding, for purposes of screening, is merely that Plaintiff has alleged sufficient facts from which Sergeant Gonzalez-Diaz's subjective knowledge of the risk can be inferred.

But as with his claims against Sergeant Jimenez and Sergeant Perez, Plaintiff fails to allege a viable claim for a different reason: he fails to plausibly allege that Sergeant Gonzalez-Diaz – even if she could be viewed as being subjectively aware of Plaintiff's medical condition – then acted with deliberate indifference to Plaintiff's health on the two occasions for which Plaintiff seeks to hold her liable.  His allegations indicate that, far from denying Plaintiff's requests for respite, Sergeant Gonzalez-Diaz was simply prevented from or hindered in granting Plaintiff's requests for respite by the lack of available staff: on one occasion, Plaintiff's request could not be honored because of insufficient staff, and on the other occasion Plaintiff's request was honored.  Plaintiff makes no allegation that Sergeant Gonzalez-Diaz was insincere in her

41 / 75

proffered reason for being unable to honor Plaintiff's respite requests or that she was deliberately disregarding Plaintiff's medical needs. Plaintiff's claim against Sergeant Gonzalez-Diaz in this regard should therefore be dismissed. *See Valentine*, 993 F.3d at 281; *Cook*, 2021 WL 6206795, at *3.

With regard to Sergeant Gonzalez-Diaz's supervisory role, Plaintiff provides no specific facts to indicate that she had authority over staffing decisions or that any subordinate's decision to deny or delay respite for Plaintiff could be attributable to Sergeant Gonzalez-Diaz as deliberate indifference. Plaintiff further alleges no specific facts that Sergeant Gonzalez-Diaz put into place an unconstitutional policy regarding access to respite. Accordingly, Plaintiff fails to state a plausible Eighth Amendment claim against Sergeant Gonzalez-Diaz based on her participation in the alleged events in her supervisory capacity.

To the extent that Plaintiff's Eighth Amendment claim can be liberally construed as alleging that Sergeant Gonzalez-Diaz also violated Plaintiff's rights by failing to ensure Plaintiff was provided the "full respite program," that claim should be dismissed. This allegations is nothing more than a claim that Plaintiff's Eighth Amendment rights were violated because all the provisions of AD-10.64 were not strictly complied with. But as discussed above, violation of a prison regulation, without more, does not give rise to a viable civil rights claim if constitutional minima are nevertheless met. *See Myers*, 97 F.3d at 94. Plaintiff's claim, rather than viably standing on its own, therefore folds back into his other Eighth Amendment deliberate indifference claim against Sergeant Gonzalez-Diaz – the undersigned has concluded that Plaintiff fails to make a plausible allegation. Additionally, Plaintiff fails to plausibly allege that Sergeant Gonzalez-Diaz possessed policymaking authority to direct and implement the "full respite program" at the McConnell Unit. In other words, as with Sergeant Jimenez and Sergeant Perez,

Plaintiff offers nothing to suggest alleges that this defendant that has the authority to set policy regarding access to respite.  Because Plaintiff does not plausibly allege that Sergeant Gonzalez-Diaz implemented an unconstitutional policy by failing generally to ensure access to the "full respite program," his claim for individual liability in that regard should be dismissed.

To recap:

- The district court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim against Sergeant Gonzalez-Diaz in her individual capacity for her alleged participation in denying or delaying Plaintiff immediate access to respite on July 2 and 9, 2023.

- The district court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim of supervisory liability against Sergeant Gonzalez-Diaz in her individual capacity because Plaintiff alleges no specific facts that Sergeant Gonzalez-Diaz put into place an unconstitutional policy regarding access to respite.

- The district court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim against Sergeant Gonzalez-Diaz in her individual capacity to the extent he alleges that she failed to generally ensure access to the "full respite program."

### iv.  Lieutenant Cavazos.

Plaintiff alleges that Lieutenant Cavazos violated Plaintiff's Eighth Amendment rights when he: (1) failed to ensure that escorts were available when Plaintiff requested respite; and (2) denied Plaintiff access to the "full respite program" under AD-10.64.  (Doc. No. 10, pp. 7-8.)

According to Plaintiff's allegations, Lieutenant Cavazos is the direct supervisor over Sergeants Jimenez, Perez, and Gonzalez-Diaz. (Doc. No. 6, p. 30.)

Here, Plaintiff alleges in a conclusory fashion that Lieutenant Cavazos denied Plaintiff access to respite due to staff shortages for escorts. (Doc. No. 10, p. 5.) He alleges no specific facts citing any specific days when Lieutenant Cavazos personally participated by delaying or denying Plaintiff access to respite or otherwise denying him escorts to access respite. With regard to Lieutenant Cavazos's supervisory role, Plaintiff provides no specific facts to indicate that Lieutenant Cavazos had authority over staffing decisions or that any subordinate's decision to deny or delay respite for Plaintiff could be attributable to Lieutenant Cavazos as deliberate indifference. Plaintiff further alleges no specific facts that Lieutenant Cavazos put into place an unconstitutional policy regarding access to respite. Accordingly, Plaintiff fails to state a plausible Eighth Amendment claim against Lieutenant Cavazos based on his participation in the alleged events either in his personal or supervisory capacity.

To the extent that Plaintiff's claim can be liberally construed as alleging that Lieutenant Cavazos also violated Plaintiff's rights by failing to ensure Plaintiff was provided the "full respite program," that claim should be dismissed. Plaintiff fails to plausibly allege that Lieutenant Cavazos possessed policymaking authority to direct and implement the "full respite program" at the McConnell Unit. In other words, as with Sergeants Jimenez, Perez, and Gonzalez-Diaz, Plaintiff offers nothing to suggest alleges that this defendant has the authority to set policy regarding access to full respite. Because Plaintiff does not plausibly allege that Lieutenant Cavazos implemented an unconstitutional policy by failing generally to ensure access to the "full respite program," his claim for individual liability in that regard should be dismissed.

To recap:

- The district court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim against Lieutenant Cavazos in his individual capacity for failure to allege personal participation in denying access to the "full respite program" or otherwise denying him escorts.

- The district court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim of supervisory liability against Lieutenant Cavazos in his individual capacity because Plaintiff alleges no specific facts that Lieutenant Cavazos put into place an unconstitutional policy regarding access to respite.

- The district court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim against Lieutenant Cavazos in his individual capacity to the extent he alleges that he failed to generally ensure access to the "full respite program."

### v. *Warden Holmes.*

Plaintiff does not allege that Warden Holmes took any specific action to participate personally in a denial of Plaintiff's rights. Rather, he claims that Warden Holmes acted with deliberate indifference in his individual capacity to Plaintiff's serious medical needs by failing to comply with the requirements of AD-10.64 and instead promulgating policies inconsistent with AD-10.64, which failed to ensure Plaintiff had access to the "full respite program" on request. (Doc. No. 6, pp. 8-9.) Liberally construed, Plaintiff specifically alleges that Warden Holmes put into place policies eliminating or limiting wellness checks, providing inadequate space for inmates like Plaintiff requesting air-conditioned respite, and inadequately staffing a sufficient number of escorts for Plaintiff to access respite upon request. (Doc. No. 6, pp. 8-9, Doc. No. 10,

pp. 5-8, 10.)  Plaintiff further alleges that, as a G5 inmate, he was subjected to a policy requiring him to be placed in 3 x 3 foot cage when placed in respite and that Warden Holmes was responsible for enforcing this policy when he was the warden at the McConnell Unit.  (Doc. No. 10, pp. 10-11.)

According to Plaintiff, his G5 custody status meant that he required an escort when moving about the unit.  (Doc. No. 10, p. 1.)  Plaintiff's allegations and attachments to his pleadings reflect that Warden Holmes was aware of Plaintiff's medical conditions and heat restrictions because of a grievance filed against Warden Holmes in April 2023 and that he was aware of Plaintiff's requests to be placed in an air-conditioned environment around that same time period.  (Doc. No. 6, p. 22; Doc. No. 10, p. 4.)  Plaintiff also alleges that, during the summer of 2023, he either was denied or delayed access to respite on numerous occasions due to the lack of availability of escorts or the lack of availability of space.  (Doc. No. 10-1, pp. 1-6.)

Plaintiff additionally challenges a policy allegedly sanctioned by Warden Holmes which supposedly required G5 inmates, including Plaintiff, to be placed in a small 3 x 3 foot cage each time they were afforded respite by staff.  (Doc. No. 10, p. 11.)  Because of his extensive medical issues, including diabetes, lymphedema, short-leg syndrome, and chronic pain resulting from a serious traffic accident, Plaintiff alleges that such an arrangement presented serious risks to his health.  According to Plaintiff, his diabetic condition caused him to urinate frequently.  (Doc. No 10, p. 12.)  He further was unable to stretch his swollen leg in such a confined environment.  *Id.* at 10.  While Plaintiff does not have a protected liberty interest in being provided respite in any particular environment, his allegations are sufficient to show that this policy of placing G5 inmates like Plaintiff in such a restrictive environment for air-conditioned respite presented a significant risk to his health.

46 / 75

As discussed above, Plaintiff's allegation that Warden Holmes failed to comply with AD-10.64 does not by itself give rise to a civil rights claim. *See Myers*, 97 F.3d at 94. To the extent that Plaintiff's claim can be liberally construed as alleging that Warden Holmes violated Plaintiff's rights by generally failing to ensure Plaintiff was provided the "full respite program," then, that claim should be dismissed. The undersigned must determine whether Plaintiff's alleged facts plausibly state an Eighth Amendment claim.

Plaintiff has alleged facts indicating that Warden Holmes instituted or sanctioned policies regarding staffing levels or the availability of escorts and space that resulted in Plaintiff's inability to receive appropriate respite when needed. Although Plaintiff's allegations lack sufficient detail to show that subordinate McConnell Unit officials had the authority to reduce staffing levels, reduce the availability of space for inmates needing respite, limit wellness checks in order to deny or limit respite for inmates like Plaintiff, or to restrict respite for G5 inmates to a 3 x 3 foot cage, such authority must reside somewhere, and the undersigned concludes based on Plaintiff's allegations that Warden Holmes' then-position as the senior warden of the McConnell Unit is the lowest echelon where that authority plausibly lies. A supervisor may be liable under the Eighth Amendment if he puts unconstitutional policies into effect, so Plaintiff's allegations regarding Warden Holmes' actions state an Eighth Amendment claim sufficient to survive screening. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556.

To recap:

- The district court should retain Plaintiff's Eighth Amendment deliberate indifference claim of supervisory liability against Warden Holmes in his individual capacity for putting into place policies limiting wellness checks, providing inadequate space for inmates like Plaintiff requesting air-conditioned

respite, inadequately staffing a sufficient number of escorts for Plaintiff to access respite upon request, and placing G5 inmates in an overly restrictive location (a 3 x 3 foot cage) for respite.

- The district court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim against Warden Holmes in his individual capacity to the extent he alleges that he failed to generally ensure access to the "full respite program."

### vi. Warden Sanchez.

Plaintiff claims that Warden Sanchez (who was apparently Warden Holmes' successor as senior warden at the McConnell Unit) acted with deliberate indifference in his individual capacity to Plaintiff's serious medical needs by failing to comply with the requirements of AD-10.64 and instead promulgating policies inconsistent with AD-10.64, which failed to ensure Plaintiff had access to the "full respite program" on request from April 2022 through August 2022. (Doc. No. 6, pp. 12-13.) Liberally construed, Plaintiff specifically alleges that Warden Sanchez put into place policies eliminating or limiting wellness checks, providing inadequate space for inmates like Plaintiff requesting air-conditioned respite, and inadequately staffing a sufficient number of escorts for Plaintiff to access respite upon request. (Doc. No. 6, pp. 12-13, Doc. No. 10, pp. 5-8, 10.) Plaintiff further alleges that, as a G5 inmate, he was subjected to a policy requiring him to be placed in 3 x 3 foot cage when placed in respite and that Warden Sanchez was responsible for enforcing this policy when he was the warden at the McConnell Unit. (Doc. No. 10, pp. 10-11.) Lastly, Plaintiff alleges Warden Sanchez put into place a policy, contrary to AD-10.64, under which all 300 inmates with a G5 custody status like Plaintiff were automatically denied respite. (Doc. No. 6, p. 12.)

As discussed above with regard to Warden Holmes, Plaintiff's allegation that Warden Sanchez failed to comply with AD-10.64 does not by itself give rise to a civil rights claim. *See Myers*, 97 F.3d at 94. To the extent that Plaintiff's claim can be liberally construed as alleging that Warden Sanchez violated Plaintiff's rights by generally failing to ensure Plaintiff was provided the "full respite program," then, that claim should be dismissed. The undersigned must determine whether Plaintiff's alleged facts plausibly state an Eighth Amendment claim.

Plaintiff's allegations and attachments to his pleadings reflect that Warden Sanchez was aware of Plaintiff's medical conditions and heat restrictions because of a grievance filed against Warden Holmes in July 2022. (Doc. No. 6, p. 26.) Plaintiff also alleges, without identifying any specific incidents, that his 30 to 50 requests for respite in an air-conditioned environment were all denied. (Doc. No. 6, p. 12.) Plaintiff, however, has alleged no specific facts to indicate that Warden Sanchez personally denied his requests for respite, and mere awareness of a prisoner's grievance is insufficient to give rise to Eighth Amendment supervisory liability. *See Keys v. United States*, No. 3:17-CV-2940-N-BH, 2020 WL 2753143, at *4 (N.D. Tex. Apr. 20, 2020), *adopted*, 2020 WL 2745604 (N.D. Tex. May 27, 2020) (although plaintiff submitted grievances to warden regarding inadequate dental care, a failure to respond to a letter or grievance does not rise to the required level of personal involvement for liability).

As with his claims against Warden Holmes, Plaintiff challenges a specific policy also allegedly sanctioned by Warden Sanchez during his time as warden which required G5 inmates, including Plaintiff, to be placed in a small 3 x 3 foot cage each time they are afforded respite by staff. (Doc. No. 10, p. 11.) As discussed above, while Plaintiff does not have a protected liberty interest in being provided respite in any particular environment, his allegations are sufficient to show that this policy of placing G5 inmates like Plaintiff in such a restrictive environment for

49 / 75

air-conditioned respite presented a significant risk to his own health. Plaintiff's claim, as construed for purposes of screening, reflects that Warden Sanchez put into place an unconstitutional policy regarding such a restrictive location when G5 inmates like Plaintiff are granted access to respite.

Next, Plaintiff alleges that Warden Sanchez put into place a policy, contrary to AD-10.64, where all of the 300 inmates with a G5 custody status like Plaintiff were automatically denied respite. (Doc. No. 6, p. 12.) Plaintiff's allegations reflect that all of his 30 to 50 requests for respite from April 2022 through August 2022 were denied while Warden Sanchez was at the McConnell Unit. *Id.* This claim, as construed for purposes of screening, reflects that Warden Sanchez put into place an unconstitutional policy regarding the absolute denial of respite for G5 inmates like Plaintiff from April 2022 through August 2022.

Plaintiff has alleged facts indicating that Warden Sanchez instituted, sanctioned, or continued policies regarding staffing levels or the availability of escorts and space that resulted in Plaintiff's inability to receive appropriate respite when needed. He further alleges that Warden Sanchez instituted a policy under which G5 inmates like Plaintiff could not receive respite at all. Although Plaintiff's allegations lack sufficient detail to show that subordinate McConnell Unit officials had the authority to reduce staffing levels, reduce the availability of space for inmates needing respite, limit wellness checks in order to deny or limit respite for inmates like Plaintiff, to restrict respite for G5 inmates to a 3 x 3 foot cage, or to deny respite altogether, such authority must reside somewhere, and the undersigned concludes based on Plaintiff's allegations that Warden Sanchez's then-position as the senior warden of the McConnell Unit is the lowest echelon where that authority plausibly lies. A supervisor may be liable under the Eighth Amendment if he puts unconstitutional policies into effect, so Plaintiff's

allegations regarding Warden Sanchez's actions state an Eighth Amendment claim sufficient to survive screening.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556.

To recap:

- The district court should retain Plaintiff's Eighth Amendment deliberate indifference claim of supervisory liability against Warden Sanchez in his individual capacity for putting into place or continuing policies limiting wellness checks, providing inadequate space for inmates like Plaintiff requesting air-conditioned respite, inadequately staffing a sufficient number of escorts for Plaintiff to access respite upon request; placing G5 inmates in a restrictive location (3 x 3 foot cage) for respite, and denying respite for G5 inmates like Plaintiff altogether from April 2022 through August 2022.

- The district court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim against Warden Sanchez in his individual capacity to the extent he alleges that he failed to generally ensure access to the "full respite program."

### vii.  Warden Amonett.

Plaintiff does not allege that Warden Amonett (apparently now the senior warden at the McConnell Unit) took any specific action to participate personally in a denial of Plaintiff's rights.  Rather, he claims Plaintiff claims that Warden Amonett acted with deliberate indifference in his individual capacity to Plaintiff's serious medical needs by failing to comply with the requirements of AD-10.64 and instead promulgating or continuing policies inconsistent with AD-10.64, which fail to ensure Plaintiff has access to the "full respite program" on request. (Doc. No. 6, p. 20; Doc. No. 10, pp. 5-8, 10.)  Liberally construed, Plaintiff specifically alleges that Warden Amonett put into place or continued policies eliminating or limiting wellness

checks, providing inadequate space for inmates like Plaintiff requesting air-conditioned respite, and inadequately staffing sufficient number of escorts for Plaintiff to access respite upon request. *Id.*  Plaintiff further alleges that, as a G5 inmate, he was subjected to a policy requiring him to be placed in 3 x 3 foot cage when placed in respite and that Warden Amonett was responsible for enforcing this policy as the current warden at the McConnell Unit.  (Doc. No. 10, pp. 10-11.)

As discussed above with regard to Wardens Holmes and Sanchez, a failure to comply with AD-10.64 does not by itself give rise to a civil rights claim.  *See Myers*, 97 F.3d at 94.  To the extent that Plaintiff's claim can be liberally construed as alleging that Warden Ammonet violated Plaintiff's rights by generally failing to ensure Plaintiff was provided the "full respite program," then, that claim should be dismissed.  The undersigned must determine whether Plaintiff's alleged facts plausibly state an Eighth Amendment claim.

As with his claims against Wardens Holmes and Sanchez, Plaintiff challenges a specific policy also allegedly sanctioned or continued by Warden Amonett as the current warden of the McConnell Unit which requires G5 inmates, including Plaintiff, to be placed in a 3 x 3 foot cage each time they are afforded respite by staff.  (Doc. No. 10, p. 11.)  As discussed above, while Plaintiff does not have a protected liberty interest in being provided respite in any particular environment, his allegations are sufficient to show that this policy of placing G5 inmates like Plaintiff in such a restrictive environment for air-conditioned respite potentially presented a significant risk to an inmate's health.  Plaintiff's claim, as construed for purposes of screening, reflects that Warden Amonett put into place or continued an unconstitutional policy regarding such a restrictive location when G5 inmates like Plaintiff are granted access to respite.

Plaintiff has alleged facts indicating that Warden Ammonet instituted, sanctioned, or continued policies regarding staffing levels or the availability of escorts and space that resulted

in Plaintiff's inability to receive appropriate respite when needed.  He further alleges that

Warden Ammonet instituted or continued a policy under which G5 inmates like Plaintiff could

not receive respite at all.  Although Plaintiff's allegations lack sufficient detail to show that

subordinate McConnell Unit officials had the authority to reduce staffing levels, reduce the

availability of space for inmates needing respite, limit wellness checks in order to deny or limit

respite for inmates like Plaintiff, to restrict respite for G5 inmates to a 3 x 3 foot cage, or to deny

respite altogether, such authority must reside somewhere, and the undersigned concludes based

on Plaintiff's allegations that Warden Ammonet's position as the senior warden of the

McConnell Unit is the lowest echelon where that authority plausibly lies.  A supervisor may be

liable under the Eighth Amendment if he puts unconstitutional policies into effect, so Plaintiff's

allegations regarding Warden Ammonet's actions state an Eighth Amendment claim sufficient to

survive screening.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556.

     To recap:

- The district court should retain Plaintiff's Eighth Amendment deliberate indifference claim of supervisory liability against Warden Amonett in his individual capacity for putting into place or continuing policies limiting wellness checks, providing inadequate space for inmates like Plaintiff requesting air-conditioned respite, inadequately staffing a sufficient number of escorts for Plaintiff to access respite upon request, placing inmates in a restrictive location (3 x 3 square foot cage) for respite, and denying G5 inmates like Plaintiff the ability to access respite altogether.

- The district court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim against Warden Amonett in his individual capacity to the

extent he alleges that he failed to generally ensure access to the "full respite program."

### viii.  *Warden Flannel.*

Plaintiff claims that Warden Flannel has acted with deliberate indifference in her individual capacity to Plaintiff's serious medical needs by failing to comply with the requirements of AD-10.64 and instead promulgating policies inconsistent with AD-10.64, which fail to ensure Plaintiff has access to the "full respite program" on request.  (Doc. No. 10, pp. 5-8, 10)  Liberally construed, Plaintiff specifically alleges that Warden Flannel also put into place policies eliminating or limiting wellness checks, providing inadequate space for inmates like Plaintiff requesting air-conditioned respite, and inadequately staffing sufficient number of escorts for Plaintiff to access respite upon request.  *Id.*

Plaintiff has alleged no specific facts to indicate that Warden Flannel personally denied Plaintiff's requests for respite or put into place any specific policies regarding staffing levels or the availability of escorts and space in a concerted effort to deny or limit respite for inmates in G5 custody upon request.  Plaintiff's allegations presented in his pleadings also lack sufficient detail to show that Warden Flannel directed or instructed her staff to reduce staffing levels, reduce the availability of space for inmates needing respite, or limit wellness checks in order to deny or limit respite for inmates like Plaintiff.  Plaintiff's allegations regarding Warden Flannel's role in not complying with AD-10.64 and instead implementing these unconstitutional polices are threadbare and insufficient to state a plausible Eighth Amendment deliberate indifference claim.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556.

To the extent that Plaintiff's claim can be liberally construed as alleging that Warden Flannel also violated Plaintiff's rights by generally failing to ensure Plaintiff was provided the

"full respite program," that claim should be dismissed. As discussed above, a failure to comply with AD-10.64 does not by itself give rise to a civil rights claim. *See Myers*, 97 F.3d at 94. Additionally, Plaintiff fails to plausibly allege that Warden Flannel possessed policymaking authority to direct and implement the "full respite program" at the McConnell Unit. In other words, Plaintiff offers nothing to suggest that this defendant has the authority to set policy regarding access to full respite. Because Plaintiff does not plausibly allege that Warden Flannel implemented an unconstitutional policy by failing generally to ensure access to the "full respite program," his claim for Warden Flannel's individual liability in that regard should be dismissed.

To recap:

- The district court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim of supervisory liability against Warden Flannel in her individual capacity for not complying with AD-10.64 and instead putting into place policies limiting wellness checks, providing inadequate space for inmates like Plaintiff requesting air-conditioned respite, and inadequately staffing a sufficient number of escorts for Plaintiff to access respite upon request.

- The district court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim against Warden Flannel in her individual capacity to the extent he alleges that she failed to generally ensure access to the "full respite program."

### ix. Warden Samaniego.

Plaintiff claims that Warden Samaniego acted with deliberate indifference in his individual capacity to Plaintiff's serious medical needs by failing to comply with the requirements of AD-10.64 and instead promulgating policies inconsistent with AD-10.64, which fail to ensure Plaintiff has access to the "full respite program" on request. (Doc. No. 6, p. 15;

Doc. No. 10, pp. 5-8, 10)  Liberally construed, Plaintiff specifically alleges that Warden Samaniego also put into place policies eliminating or limiting wellness checks, providing inadequate space for inmates like Plaintiff requesting air-conditioned respite, and inadequately staffing sufficient number of escorts for Plaintiff to access respite upon request.  *Id.*

Plaintiff has alleged no specific facts to indicate that Warden Samaniego personally denied Plaintiff's requests for respite or put into place any specific policies regarding staffing levels or the availability of escorts and space in a concerted effort to deny or limit respite for inmates in G5 custody upon request.  Plaintiff's allegations presented in his pleadings lack sufficient detail to show that Warden Samaniego directed or instructed his staff to reduce staffing levels, reduce the availability of space for inmates needing respite, or limit wellness checks in order to deny or limit respite for inmates like Plaintiff.  Plaintiff's allegations regarding Warden Samaniego's role in not complying with AD-10.64 and instead implementing these unconstitutional polices are threadbare and insufficient to state a plausible Eighth Amendment deliberate indifference claim.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556.

To the extent that Plaintiff's claim can be liberally construed as alleging that Warden Samaniego also violated Plaintiff's rights by generally failing to ensure Plaintiff was provided the "full respite program," that claim should be dismissed.  As discussed above, a failure to comply with AD-10.64 does not by itself give rise to a civil rights claim.  *See Myers*, 97 F.3d at 94.  Additionally, Plaintiff fails to plausibly allege that Warden Samaniego possessed policymaking authority to direct and implement the "full respite program" at the McConnell Unit.  In other words, Plaintiff offers nothing to suggest that this defendant has the authority to set policy regarding access to full respite.  Because Plaintiff does not plausibly allege that

Warden Samaniego implemented an unconstitutional policy by failing generally to ensure access to the "full respite program," his claim for individual liability in that regard should be dismissed.

To recap:

- The district court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim of supervisory liability against Warden Samaniego in his individual capacity for not complying with AD-10.64 and instead putting into place policies limiting wellness checks, providing inadequate space for inmates like Plaintiff requesting air-conditioned respite, and inadequately staffing a sufficient number of escorts for Plaintiff to access respite upon request.

- The district court should dismiss Plaintiff's Eighth Amendment deliberate indifference claim against Warden Samaniego in his individual capacity to the extent he alleges that he failed to generally ensure access to the "full respite program."

### x. Failure to train and failure to supervise.

Plaintiff seeks to hold the following defendants responsible in their supervisory capacities for failure to train subordinate staff during the summer heat conditions present in 2022 and 2023 and for failure to supervise subordinate staff regarding the implementation of AD-10.64: Warden Holmes; Warden Sanchez; Warden Amonett; Warden Flannel; and Warden Samaniego.  (Doc. No. 10, pp. 10-11; Doc. No. 11, pp. 1-6.)  Plaintiff cites a long list of alleged deficiencies purportedly committed by these subordinate officials as a group in connection with their failure to train or supervise.  (Doc. No. 11, pp. 1-6.)

In order to successfully allege a claim against each supervisory official, a plaintiff must allege that each supervisory official was "personally involved in the deprivation of his rights."

57 / 75

*Alexander v. Southern Health Partners, Inc.*, No. 3:22-cv-0395-x, 2023 WL 3961704, at *3

(N.D. Tex. June 12, 2023) (quoting *Thomas v. Humfield*, Nos. 92-2177, 92-2179, 1994 WL

442484, at *5 (5th Cir. 1994)).  *Alexander* further explained:

> And a plaintiff can't, in conclusory fashion, assert that supervisory officials
> collectively violated his rights.  When a plaintiff fails to distinguish the actions
> of each defendant, the plaintiff engages in quintessential shotgun pleading,
> which could properly be disregarded.  Shotgun pleading violates Federal Rule of
> Civil Procedure 8's "notice pleading standard by failing … to give the
> defendants adequate notice of the claims against them and the grounds upon
> which each claim rests.

*Alexander*, 2023 WL 3961704, at 3 (citations, quotations, and footnotes omitted); *see also Davis*

*v. City of Alvarado*, No. 19-CV-463-K-BK, 2019 WL 6896878, at *4 n.2 (N.D. Tex. Dec. 3,

2019 (recognizing that "shotgun pleading must be disregarded where it uses blanket terms to

address all defendants collectively or asserts multiple claims against multiple defendants without

specifying which defendants are responsible for which acts" (cleaned up)), *adopted*, 2019 WL

6894686 (N.D. Tex. Dec. 18, 2019), *aff'd*, 835 F. App'x 714 (5th Cir. 2020) (*per curiam*).

Here, Plaintiff lumps all of the supervisory wardens together in alleging that they

collectively failed to train or supervise subordinate staff with respect to the handling of excessive

heat conditions and the implementation of AD-10.64.  Plaintiff fails to delineate the respective

alleged supervisory duties of each warden during excessive heat conditions and the timeframe

when the protocols in AD-10.64 were in effect.  Plaintiff further fails to identify each warden's

specific responsibilities in training supervising subordinate staff employees.  Without providing

such detail as to the supervisory responsibilities of each warden named in this lawsuit, Plaintiff is

deficient in providing each defendant notice of the grounds upon which his claims rest for

supervisory liability based on his or her failure to train or supervise subordinate staff.  As noted

in *Alexander*, these facts ultimately could be relevant in a qualified immunity analysis potentially raised in a later stage of this case.  *See Alexander*, 2023 WL 3961704, at *4.

Based on the infirmities present in Plaintiff's shotgun pleading, the undersigned recommends that the district court dismiss without prejudice Plaintiff's claims of supervisory liability based on failure to train or supervise against Warden Holmes, Warden Sanchez, Warden Amonett, Warden Flannel, and Warden Samaniego in their individual capacities.  While explaining below that Plaintiff should not be given an opportunity to amend his complaint as to the other claims dismissed in this case, the undersigned recommends granting Plaintiff an opportunity to amend his complaint only with respect to allegations detailing each warden's respective duty and role in training and supervising subordinate staff during excessive heat conditions.

### xi.  Dr. Kwarteng.

Plaintiff claims that Dr. Kwarteng violated his Eighth Amendment rights by acting with deliberate indifference to his serious medical needs in connection with the excessive heat conditions.  (Doc. No. 6, p. 18.)  Plaintiff alleges that:

- he sent numerous sick call requests to the McConnell Unit's medical department from March 28, 2022 through August 2, 2022;

- Dr. Kwarteng reviewed multiple sick call requests sent by Plaintiff;

- Dr. Kwarteng responded in writing to five sick call requests; and

- Dr. Kwarteng neither performed any examinations on Plaintiff nor prescribed or adjusted medications to address Plaintiff's symptoms caused by excessive heat conditions.

(Doc. No. 6, pp. 18-19; Doc. No. 10, pp. 14-15.)

59 / 75

Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs. *See Estelle*, 429 U.S. at 104. Deliberate indifference may be exhibited by prison doctors or nurses in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Id.* at 104-05. In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (internal quotation marks and citation omitted). Delay in treatment may be actionable under § 1983 only if there has been deliberate indifference and the delay results in substantial harm. *Stewart*, 174 F.3d at 537; *Mendoza*, 989 F.2d at 195. On the other hand, a prisoner's mere disagreement with medical treatment does not state a claim for Eighth Amendment deliberate indifference. *See Gobert*, 463 F.3d at 346; *Domino*, 239 F.3d at 756. Likewise, negligence in giving or failing to supply medical care also does not give rise to an Eighth Amendment violation. *Stewart*, 174 F.3d at 534; *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under Section 1983").

Here, Plaintiff's allegations reflect that in his five written responses to Plaintiff from July 6, 2022 through August 2, 2022, Dr. Kwarteng advised Plaintiff about his assignment to appropriate heat-related medical restrictions and that any concerns about respite requests should be directed to TDCJ security officials. (Doc. No. 10, p. 15.) Dr. Kwarteng provided advice related to the excessive heat conditions in only one response, and his advice was limited to the common sense suggestion to "stay hydrated." *Id.* Plaintiff's allegations, accepted as true for

screening purposes, reflect that Dr. Kwarteng: (1) was well aware of his heat-related issues through Plaintiff's multiple sick call requests; but (2) effectively ignored and failed to treat the numerous symptoms reported by Plaintiff by failing to examine Plaintiff personally or directing other medical personnel to examine and treat him in any capacity regarding his heat-related complaints.

The undersigned finds Plaintiff's allegations are sufficient to allege an Eighth Amendment deliberate indifference claim against Dr. Kwarteng. Accordingly, the district court should retain this claim against Dr. Kwarteng in his individual capacity.

### xii. Dr. Morton.

Plaintiff claims that Dr. Morton violated his Eighth Amendment rights by acting with deliberate indifference to his serious medical needs by delaying necessary mental health treatment as requested. (Doc. No. 10, p. 18.) Plaintiff alleges that:

- on April 13, 2023, he submitted a Step 1 grievance requesting medications for his hallucinations, delusions, schizophrenia condition, panic attacks, and inability to think and sleep during the excessive heat;

- Plaintiff, however, was not seen by Dr. Morton until August 16, 2023;

- on either August 16 or 17, 2023, Dr. Morton prescribed Plaintiff with Haldol, a drug Plaintiff alleges is used to treat schizophrenia; and

- from April 2023 through August 2023, Plaintiff's thermoregulatory system was impaired in that he could not maintain a normal body temperature during the excessive heat.

*Id.*; Doc. 11-2, p. 3.

While alleging that he was not seen by Dr. Morton until more than four months after submitting his April 13, 2023 grievance, Plaintiff alleges no facts to indicate that Dr. Morton had any knowledge of the grievance or that it was his responsibility to respond to the grievance and provide immediate care to Plaintiff.  Plaintiff's allegations merely show that, once he examined Plaintiff on August 16, 2023, he promptly prescribed Plaintiff with a new medication.  At best, Plaintiff's allegations suggest that medical officials reviewing Plaintiff's April 13, 2023 grievance may have been negligent in communicating Plaintiff's mental health issues promptly to Dr. Morton.

Accordingly, because Plaintiff's allegations fail to show that Dr. Morton acted with deliberate indifference in ignoring Plaintiff's complaints and refusing to treat him, the district court should dismiss Plaintiff's Eighth Amendment deliberate indifference claims against Dr. Morton in his individual capacity.

### 2.  ADA and RA.

Plaintiff asserts claims under the ADA and the RA against each named defendant (Warden Holmes, Warden Sanchez, Warden Amonett, Warden Flannel, Warden Samaniego, Dr. Kwarteng, Dr. Morton, Sergeant Jimenez, Sergeant Perez, Sergeant Gonzalez-Diaz, Lieutenant Cavazos, Director Lumpkin, Executive Director Collier, and the State of Texas).  Plaintiff sues each individual defendant in his or her official capacity.

With regard to his ADA and RA claims against each defendant other than Dr. Morton, Plaintiff's ADA and RA claims arise in connection with the alleged denial of reasonable accommodations under the "full respite program."  (Doc. No. 6, pp. 10-11, 14, 16, 20, 30-31.) Due to his extensive physical and mental health disabilities, Plaintiff seeks a reasonable accommodation when placed in respite in the form of being placed in an air-conditioned

environment other than a 3 x 3 foot cage.  *Id.*; Doc. No. 10, p. 4.  With regard to his ADA and

RA claim against Dr. Morton, Plaintiff alleges that Dr. Morton denied him access "to the

services, benefits, activities, and programs because of an and solely by reason of Plaintiff's

schizophrenia" and failed to ensure Plaintiff received appropriate housing during periods of

excessive heat conditions.  (Doc. No. 10, p. 19.)

### a. Law.

The ADA provides that "no qualified individual with a disability shall, by reason of such

disability, be excluded from participation in or be denied the benefits of the services, programs

or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. §

12132.  Similarly, under the RA, "[n]o qualified individual with a disability . . . shall, solely by

reason of her or his such disability, be excluded from participation in, be denied the benefits of,

or be subjected to discrimination under any program or activity receiving Federal financial

assistance."  29 U.S.C. § 794(a).

"The RA is operationally identical to the ADA in that both statutes prohibit

discrimination against disabled persons; however, the ADA applies only to public entities while

the RA applies to any federally funded programs or activities, whether public or private."  *Borum

v. Swisher Cnty.*, No. 2:14-CV-127-J, 2015 WL 327508, at *3 (N.D. Tex. Jan. 26, 2015) (citing

*Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)).  Courts utilize the same standards in

analyzing claims under both the ADA and RA.  *See Frame v. City of Arlington*, 657 F.3d 215,

223-24 (5th Cir. 2011).  Therefore, the undersigned analyzes Plaintiff's ADA and RA claims

together.  *See Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

To establish a valid ADA claim, a plaintiff must show that (1) he has a qualifying

disability; (2) he is being denied the benefits of services, programs, or activities for which the

public entity is responsible, or is otherwise discriminated against by the public entity; and (3) such discrimination is by reason of his disability. *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018). A qualifying disability is a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The definition of "disability" is to be given broad construction. *See id.* § 12102(4)(A).

To "prevail on a Rehabilitation Act claim, the plaintiff must ultimately prove that the defendant discriminated against him or her *solely* on the basis of disability." *Taylor v. City of Shreveport*, 798 F.3d 276, 284 (5th Cir. 2015) (emphasis in original); *see also Davidson v. Tex. Dep't of Criminal Justice, Inst. Div.*, 91 F. App'x 963, 965 (5th Cir. 2004) (*per curiam*) (applying similar standard for ADA claim). To recover money damages, more is required: Plaintiff must also show that the discrimination was intentional. *Miraglia*, 901 F.3d at 574.

Under the ADA, discrimination effectively means failure to provide a reasonable accommodation to the needs of the disabled person. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004). The Fifth Circuit has held that a prison's failure to satisfy the reasonable accommodation requirement may constitute a denial of services or benefits as well as intentional discrimination sufficient to satisfy the second and third prongs of the Title II ADA inquiry. *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014). "To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Ball*, 792 F.3d at 596 n.9.

The individual defendants in Plaintiff's ADA and RA claims are sued in their official capacities. The ADA does not "itself prohibit suits against both the State and its agencies." *Patrick v. Martin*, No. 2:16-CV-216, 2018 WL 3966349, at *5 (N.D. Tex. Jun. 29, 2018),

*adopted*, 2018 WL 3956484 (N.D. Tex. Aug. 17, 2018) (citing 42 U.S.C. § 12131(1)(a)-(b)).
The Fifth Circuit further has held that state officers sued in their official capacities are proper
defendants in suits brought under the ADA.  *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d
407, 412-14 (5th Cir. 2004) ("Defendants have been sued in their official capacities and are
therefore representing their respective state agencies (which are proper Title II defendants) for all
purposes except the Eleventh Amendment.").

In the prison context, failure to make reasonable accommodations to the needs of a
disabled prisoner may have the effect of discriminating against that prisoner because the lack of
accommodation may cause the disabled prisoner to suffer more pain and punishment than non-
disabled prisoners.  *See United States v. Georgia*, 546 U.S. 151, 160 (2006) (recognizing
prisoner's allegations that defendant refused to provide a reasonable accommodation to a
paraplegic inmate, "in such fundamentals as mobility, hygiene, [and] medical care," resulted in
the disabled inmate suffering serious punishment "without penal justification" and supported
claims under the ADA and RA).

### b. *Reasonable accommodation – air-conditioned environment.*

Construing the pleadings liberally and accepting Plaintiff's allegations as true, the
undersigned finds that Plaintiff sufficiently shows that he suffers from physical impairments that
greatly limit his daily life activities, and that, at least for purposes of this screening, he is a
"qualified individual with a disability."  *See Peña Arita v. Cnty. of Starr, Tex.*, No. 7:19-CV-
00288, 2020 WL 5505929, at *5 (S.D. Tex. Sept. 11, 2020) (Alvarez, J.) (in evaluating a motion
to dismiss, the court explains that it cannot say definitely whether the individual suffered a
disability, but that the court's role is to "interpret Plaintiffs' complaint as a whole and grant
Plaintiffs every reasonable inference to determine whether Plaintiffs state a plausible claim for

relief").[6]  Plaintiff's allegations reflect that that he has consistently been denied access to the "full respite program" set forth in AD-10.64, especially unlimited access upon request to a comfortable air-conditioned environment during excessive heat conditions.  (Doc. No. 10, pp. 4-5, 8.)  His allegations further reflect that he has been denied respite or delayed access to respite on a number of occasions.  (Doc. No. 10-1.)

The undersigned accepts, for purposes of screening only, that Plaintiff has sufficiently alleged that the excessive heat conditions present in the summers of 2022 and 2023 are more onerous on him because of his particular alleged disabilities.  He also alleges that the named defendants have denied him reasonable accommodations for his heat-sensitive disabilities by not providing him with access to the "full respite program," which includes unlimited access to an air-conditioned environment upon request.  Plaintiff's allegations suggest that the lack of such accommodations caused him to suffer more pain and punishment than non-disabled prisoners.

At this early stage in the proceedings, the undersigned concludes that these allegations are sufficient to survive screening: Plaintiff's ADA and RA claims should be retained against the State of Texas and each defendant,[7] other than Dr. Morton, in his or her official capacity.

---

[6]  Plaintiff alleges that he suffers from the following physical and mental health conditions: hyperlipidemia; type II diabetes, hypertension, seizures, Major Depression Disorder with psychotic features, PTSD, and schizophrenia. (Doc. No. 10, p. 2.)  Plaintiff alleges that his physical and mental health disabilities impact his ability to stand, lift, bend, stoop, squat, sit, walk, sleep, think, concentrate, read, and breathe when he has panic attacks.  *Id.* at 3.  "The definition of 'disability' is broad and accommodating—an impairment that 'substantially limits' a major life activity need only reduce the disabled person's ability to perform a major life activity as compared to the general population." *Peña Arita*, 2020 WL 5505929, at *4 (quoting *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590-91 (5th Cir. 2016)).

[7]  The ADA and RA claims against Director Collier, Director Lumpkin, and the State of Texas can move forward at this screening stage based on the theory of *respondeat superior*, a theory that in this ADA/RA context is used to impute actions of an employee-agent to an employer.  *See Rodriguez v. Mrs. Baird's Bakery, Inc.*, No. 95-50923, 1997 WL 156989, at *3 (5th Cir. Mar. 25, 1997) (*per curiam*).

### c. *Dr. Morton – medication and housing.*

Plaintiff alleges that Dr. Morton denied him access "to the services, benefits, activities, and programs because of and solely by reason of Plaintiff's schizophrenia" and that such denial occurred between April 2023 and August 2023  (Doc. No. 10, p. 19.)  While his claim is somewhat confusing, Plaintiff appears to allege that he was denied as a service or benefit in the form of the medication Haldol as a treatment for his alleged schizophrenia condition during the time frame which corresponded with excessive heat conditions in 2023.

The ADA and RA do not establish a "standard of care" for medical treatment in prisons. *See Hale v. Harrison Cnty. Bd. of Supervisors*, 8 F.4th 399, 404 n.†; *Walls v. Tex. Dep't of Criminal Justice*, 270 F. App'x 358, 359 (5th Cir. 2008).  The ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012)).  And the ADA does not create a remedy for medical malpractice or medical negligence.  *Cadena*, 946 F.3d at 726; *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)); *see also Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 603 n.14 (1999)* ("We do not in this opinion hold that the ADA imposed on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to individuals with disabilities.'").  A plaintiff cannot bring an ADA or RA claim simply by restating a claim of denial of medical care, and a plaintiff's disagreement with medical treatment likewise does not state a claim under the ADA or RA.  *See Whetstone v. Hall*, No. 4:17CV158-JMV, 2018 WL 1022586, at *2 (N.D. Miss. Feb. 22, 2018) ("The ADA and RA exist to protect individuals from being discriminated against because they have disabilities; they do not exist to challenge a person's treatment for a disability.").

Here, Plaintiff's allegation against Dr. Morton referencing his schizophrenia treatment merely restates his Eighth Amendment claim for denial of adequate medical care from April 2022 through August 2022.  Because this allegation against Dr. Morton references a denial of medical care in the form of receiving Haldol medication during the summer months, and not discrimination based on a disability (whether intentional or through a failure to accommodate), Plaintiff's ADA and RA claim is subject dismissal as frivolous and for failure to state a claim upon which relief can be granted.  The undersigned therefore recommends dismissal of this ADA and RA claim against Dr. Morton in his official capacity.

Plaintiff further alleges that Dr. Morton failed to ensure Plaintiff received appropriate housing during periods of excessive heat conditions.  (Doc. No. 10, p. 19.)  In the prison context, housing is a program or service under the ADA.  *See Epley v. Gonzalez*, 860 F. App'x 310, 313-14 (5th Cir. 2021); *Atomanczyk v. Tex. Dep't of Crim. Just.*, No. 4:17-CV-00719, 2021 WL 2915030, at *7 (S.D. Tex. July 12, 2021) (Eskridge, J.).

With respect to his ADA and RA claims brought against the other defendants, Plaintiff specified that he sought reasonable accommodations in the form of access to the "full respite program" which included respite in an air-conditioned environment.  Here, Plaintiff provides no facts detailing the type of housing he seeks as a reasonable accommodation.  It is also unclear whether Plaintiff seeks certain housing so that he can more easily receive the Haldol medication or whether the housing sought referenced in some capacity protection from the excessive heat conditions.  Plaintiff otherwise alleges nothing to suggest that Dr. Morton has ever had any authority to make decisions regarding Plaintiff's housing.  Plaintiff's conclusory and threadbare allegations regarding Dr. Morton's failure to ensure Plaintiff received appropriate housing are insufficient to state a plausible ADA and RA claim.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550

68 / 75

U.S. at 556.  The undersigned therefore recommends dismissal of this ADA and RA claim

against Dr. Morton in his official capacity.

### G. Claims not specifically addressed in this memorandum and recommendation.

To ensure justice and access to the courts, courts interpret pleadings of pro se litigants

liberally.  *See United States v. Robinson*, 78 F.3d 172, 174 (5th Cir. 1996) (citing *United States v.*

*Santora*, 711 F.2d 41, 42 (5th Cir. 1983)).  *Pro se* actions will not be dismissed based on

technical pleading defects and should be construed to ensure such claims are given fair and

meaningful consideration despite the unrepresented litigant's unfamiliarity with the law.  *See*

*Haines*, 404 U.S. at 520-21; *see also Estelle*, 429 U.S. at 106 (pro se parties are normally

accorded more leniency in the construction of their pleadings).

The undersigned has liberally construed Plaintiff's amended complaint and his response

to the Court's questionnaire as amended to give his claims fair and meaningful consideration.

The undersigned has attempted to articulate and analyze Plaintiff's claims in an impartial manner

consistent with providing appropriate leniency to *pro se* litigants while at the same time requiring

compliance with applicable pleading and screening standards.  To the extent Plaintiff is

attempting to raise any other claim not specifically addressed by the undersigned in this

memorandum and recommendation, the undersigned has concluded that Plaintiff has failed to

state such claim with sufficient factual detail or clarity to allow the claim to be identified or

analyzed by the Court.

As stated previously, "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Again, Plaintiff must

allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference

that Defendant is liable.  *Id.*; *Twombly*, 550 U.S. at 556.  Further, the factual allegations must

raise Plaintiff's claim for relief above the level of mere speculation.  *Twombly*, 550 U.S. at 555.

Therefore, Plaintiff is advised that any claim not addressed in this memorandum and

recommendation is not currently before this Court because Plaintiff has failed to allege sufficient

facts or state such claims clearly.

### H.  *Leave to amend?*

The undersigned is recommending dismissal of some of Plaintiff's claims. "When the

dismissal of a *pro se* complaint is appropriate, it should generally be done without prejudice in

order to allow the plaintiff an opportunity to file an amended complaint."  *Rodriguez v. United*

*States*, 66 F.3d 95, 97 (5th Cir. 1995).  But leave to amend need not be granted if amendment

would be futile – for example, if an amended complaint would still fail to state a claim upon

which relief may be granted.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (futility of

amendment is adequate justification to refuse to grant leave to amend).

"If the prisoner has filed his complaint and submitted questionnaire responses, then the

court may conclude that he has pleaded his best case such that granting him further leave to

amend would be futile or cause unnecessary delay."  *Clark v. Waddell*, No. 7:22-cv-00059-MBP,

2023 WL 8605313, at *18 (N.D. Tex. Nov. 15, 2023) (citing *Witherspoon v. Waybourn*, No.

4:20-cv-1150-P, 2021 WL 2635917, at *10 (N.D. Tex. June 25, 2021) and *McLean v. King*, No.

3:20-cv-1244-C-BK, 2020 WL 6049297, at *2 (N.D. Tex. Sept. 15, 2020)); *see also Mejia v.*

*Monroe*, No. H-18-3036, 2021 WL 765726, at *2 (S.D. Tex. Feb. 26, 2021) (Miller, J.) (finding

that inmate had pleaded his best case where he was afforded an opportunity to plead facts

supporting his claim through a more definite statement).

Here, Plaintiff has had the opportunity to plead his best case against Defendants with

respect to the majority of his claims: he has filed an amended complaint and has responded to the

70 / 75

Court's Questionnaire.  He additionally has amended his response to the Questionnaire.  Where the undersigned has recommended dismissal of a claim with prejudice, therefore, that dismissal should be without leave to amend because Plaintiff has already pleaded his best case.  As discussed above, however, the undersigned recommends granting Plaintiff an opportunity to amend his complaint only with respect to allegations detailing the respective duties and roles of Warden Holmes, Warden Sanchez, Warden Amonett, Warden Flannel, and Warden Samaniego in training and supervising subordinate staff during excessive heat conditions.

### I.  Conclusion and recommendation.

The district court should take the following actions:

- The district court should RETAIN the following claims:
    - Plaintiff's Eighth Amendment deliberate indifference claim of supervisory liability against Warden Holmes in his individual capacity for putting into place and enforcing policies limiting wellness checks, providing inadequate space for inmates like Plaintiff requesting air-conditioned respite, inadequately staffing a sufficient number of escorts for Plaintiff to access respite upon request, and placing G5 inmates in an overly restrictive location (3 x 3 foot cage) for respite;
    - Plaintiff's Eighth Amendment deliberate indifference claims of supervisory liability against Warden Sanchez in his individual capacity for putting into place or continuing policies limiting wellness checks, providing inadequate space for inmates like Plaintiff requesting air-conditioned respite, inadequately staffing a sufficient number of escorts for Plaintiff to access respite upon request; placing G5 inmates in a

restrictive location (3 x 3 foot cage) for respite, and denying respite for G5 inmates like Plaintiff altogether from April 2022 through August 2022;

- Plaintiff's Eighth Amendment deliberate indifference claim of supervisory liability against Warden Amonett in his individual capacity for putting into place or continuing policies limiting wellness checks, providing inadequate space for inmates like Plaintiff requesting air-conditioned respite, inadequately staffing a sufficient number of escorts for Plaintiff to access respite upon request, placing inmates in a restrictive location (3X3 square foot cage) for respite, and denying G5 inmates like Plaintiff the ability to access respite;

- Plaintiff's Eighth Amendment deliberate indifference claim against Dr. Kwarteng in his individual capacity based on his awareness of Plaintiff's heat-related medical issues from June 2022 through August 2022 and failure to attend to Plaintiff's medical needs; and

- Plaintiff's failure-to-accommodate ADA and RA claims (access to "full-respite program including unlimited access to an air-conditioned environment) against the State of Texas and against Warden Holmes, Warden Sanchez, Warden Amonett, Warden Flannel, Warden Samaniego, Dr. Kwarteng, Sergeant Jimenez, Sergeant Perez, Sergeant Gonzalez-Diaz, Lieutenant Cavazos, Director Lumpkin, and Executive Director Collier in their official capacities for injunctive relief.

- The district court should DISMISS the following claims with prejudice:
  - Plaintiff's Eighth Amendment deliberate indifference claim against Sergeant Jimenez in his individual capacity for his alleged participation in denying or delaying Plaintiff immediate access to respite on July 5 and 13, 2023;
  - Plaintiff's Eighth Amendment deliberate indifference claim against Sergeant Perez in his individual capacity for his alleged participation in denying or delaying Plaintiff immediate access to respite on each day between July 14 and 16, 2023.
  - Plaintiff's Eighth Amendment deliberate indifference claim against Sergeant Gonzalez-Diaz in her individual capacity for her alleged participation in denying or delaying Plaintiff immediate access to respite on July 2 and 9, 2023.
  - Plaintiff's Eighth Amendment deliberate indifference claims of supervisory liability against Sergeant Jimenez, Sergeant Perez, Sergeant Gonzalez-Diaz, Lieutenant Cavazos in their individual capacities regarding whether they put into place an unconstitutional policy regarding access to respite;
  - Plaintiff's Eighth Amendment deliberate indifference claim of supervisory liability against Warden Holmes, Warden Sanchez, Warden Amonett, Warden Flannel, and Warden Samaniego in their individual capacities regarding their respective noncompliance with AD-10.64;

- ○ Plaintiff's Eighth Amendment deliberate indifference claims against Sergeant Jimenez, Sergeant Perez, Sergeant Gonzalez-Diaz, Lieutenant Cavazos, Warden Holmes, Warden Sanchez, Warden Amonett, Warden Flannel, and Warden Samaniego in their individual capacities to the extent they failed to generally ensure access to the "full respite program" or otherwise denying him escorts; and

- ○ All of Plaintiff's Eighth Amendment claims against Dr. Morton in his individual capacity and Plaintiff's ADA and RA claims against Dr. Morton in his official capacity.

- The district court should DISMISS the following claims without prejudice:

- ○ Plaintiff's Eighth Amendment claims of supervisory liability against Warden Holmes, Warden Sanchez, Warden Amonett, Warden Flannel, and Warden Samaniego in their individual capacities based on their alleged failure to train or supervise staff.

- The district court should NOT grant Plaintiff leave to amend his complaint, except that Plaintiff should be granted an opportunity to amend his complaint with respect to presenting allegations detailing the respective duties and roles of Warden Holmes, Warden Sanchez, Warden Amonett, Warden Flannel, and Warden Samaniego in training and supervising subordinate staff during excessive heat conditions.

### J. Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within 14 days after being served with a copy of the Memorandum and

Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas. A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

      SIGNED on March 15, 2024.

MITCHEL NEUROCK
United States Magistrate Judge